**2016-1302**

In The
# United States Court Of Appeals
# For The Federal Circuit

# U.S. BANCORP,

*Appellant.*

v.

# SOLUTRAN, INC.,

*Appellee.*

APPEAL FROM THE PATENT TRIAL AND APPEAL BOARD OF THE
UNITED STATES PATENT AND TRADEMARK OFFICE,
IN CASE NO. CBM2014-00076

————————————

## BRIEF OF APPELLANT

————————————

Devan V. Padmanabhan
Michelle E. Dawson
WINTHROP & WEINSTINE, P.A.
225 South Sixth Street, Suite 3500
Minneapolis, MN 55402
(612) 604-6400

*Dated: February 8, 2016*                    *Counsel for Appellant*

## **CERTIFICATE OF INTEREST**

Counsel for Petitioner Appellant U.S. Bancorp certifies the following:

    1.    The full name of every party or amicus represented by me is:

    U.S. Bancorp

    2.    The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

    U.S. Bancorp

    3.    All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

U.S. Bancorp has no parent corporation and no publicly held corporation owns 10% or more of its stock.

    4.    The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

Michelle E. Dawson
Devan V. Padmanabhan
Paul J. Robbennolt
Nadeem W. Schwen
WINTHROP & WEINSTINE, P.A.

February 8, 2016

/s/ Michelle E. Dawson
Michelle E. Dawson, #0388610

i

# **TABLE OF CONTENTS**

**Page**

CERTIFICATE OF INTEREST ............................................................................i

TABLE OF CONTENTS.................................................................................. ii

TABLE OF AUTHORITIES ............................................................................v

STATEMENT OF RELATED CASES ............................................................ vii

STATEMENT OF JURISDICTION.................................................................1

STATEMENT OF THE ISSUES......................................................................1

INTRODUCTION ...........................................................................................3

STATEMENT OF THE CASE.........................................................................4

      A.     The State of the Art at the Time of Filing of the '945 Patent
            According to the '945 Patent.................................................................4

      B.     The Alleged Invention of the '945 Patent .........................................10

      C.     The Petition for Covered Business Method Review ...........................12

            a.     The '945 Patent .......................................................................12

            b.     Randle ......................................................................................13

      D.     Institution Decision ...........................................................................14

      E.     Board Decision ..................................................................................15

            a.     Claim Construction .................................................................16

            b.     Level of Skill in the Art ...........................................................16

            c.     The Board's Decision ..............................................................16

      F.     Petitioner's Request for Rehearing of the Final Written Decision........ 20

      G.     Decision Denying Rehearing .............................................................22

SUMMARY OF THE ARGUMENT .......................................................24

ARGUMENT .........................................................................................26

    I.      Standard of Review .................................................................26

    II.     The Board Erred in Its Determination of Non-Obviousness...............26

         A.     The Board Erred in Determining That a Person of Skill in the Art Would Not Read Figure 2 of the '945 Patent to Include MICR Capture at the Point of Sale ................................ 28

              1.     The Board Erred as a Matter of Law Because it Disregarded the Level of Skill in the Art in Determining Whether Figure 2 Disclose MICR Capture at the Point of Sale ............................................... 28

              2.     The Board's Finding That Figure 2 of the '945 Patent Does Not Disclose MICR Capture at the Point of Sale is Not Supported by Substantial Evidence .........................................................................35

         B.     The Board Erred in Ignoring Evidence That a Person of Skill in the Art Would Find it Obvious to Receive/Scan Checks After Crediting a Merchant Account ..........................38

              1.     To the Extent the Board Based Its Finding on Its Failure to Determine that Figure 2 Discloses MICR Capture at the Point of Sale, the Board Erred as a Matter of Law ...............................................39

              2.     To the Extent the Board Finds That Figure 2 Does Not Disclose That Sending an Image of the Check with Check Data to the TPPP Is Optional That Finding Is Not Supported by Substantial Evidence........41

              3.     The Board Committed Legal Error when it Failed to Apply the Proper Test Under *KSR* Regarding the Combination of Prior Art Disclosed in the '945 Patent and Randle ..........................................................43

III.    The Board's Failure to Provide Its Reasoning
Constitutes Error Under the Administrative Procedure
Act § 706 ................................................................................47

CONCLUSION ...................................................................................................48

ADDENDUM

CERTIFICATE OF FILING AND SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Consol. Edison Co. v. NLRB*,
    305 U.S. 197 (1938).....................................................................26

*Cutsforth, Inc. v. MotivePower, Inc.*,
    No. 2015-1316, 2016 WL 279984 (Fed. Cir. Jan. 22, 2016) .............2, 47, 48

*Ex parte Rubin*,
    128 U.S.P.Q. 440 (Bd App. 1959)..................................................44

*Graham v. John Deere Co.*,
    383 U.S. 1 (1966)..........................................................17, 26, 28

*In re Abbott Diabetes Care Inc.*,
    696 F.3d 1142 (Fed. Cir. 2012) ....................................................26

*In re Baxter Int'l, Inc.*,
    678 F.3d 1357 (Fed. Cir. 2012) ....................................................26

*In re Burhans*,
    154 F.2d 690 (C.C.P.A. 1946)......................................................44

*In re Cuozzo Speed Techs., LLC*,
    793 F.3d 1268 (Fed. Cir. 2015) ....................................................26

*In re Gibson*,
    39 F.2d 975 (C.C.P.A. 1930)........................................................44

*In re Sang-Su Lee*,
    277 F.3d 1338 (Fed. Cir. 2002) ...............................................*passim*

*KSR Int'l Co. v. Teleflex Inc.*,
    550 U.S. 398 (2007)...........................................................*passim*

*Randall Mfg. v. Rea*,
    733 F.3d 1355 (Fed. Cir. 2013) ..........................................1, 24, 29

**Statutes:**

5 U.S.C. §§ 500 *et seq.* (Administrative Procedure Act)................................*passim*

5 U.S.C. § 706...............................................................................................25, 47

5 U.S.C. § 706(2) .................................................................................................47

35 U.S.C. § 101......................................................................................................12

35 U.S.C. § 103...............................................................................................12, 26

35 U.S.C. § 141(c) ..................................................................................................1

**Legislative Materials:**

Leahy-Smith America Invents Act § 7(c)(2), Pub. L. 112-29, 125 Stat. 314
(effective Sept. 16, 2011) ...............................................................................1

## <u>STATEMENT OF RELATED CASES</u>

This is an appeal from a final written decision and a decision denying rehearing by the Patent Trial and Appeal Board ("Board") concerning claims 1-6 of U.S. Patent No. 8,311,945 (the "'945 patent").  The covered business method ("CBM") review case number is CBM2014-00076.  The '945 patent is also the subject of district court litigation captioned *Solutran, Inc. v. U.S. Bancorp and Elavon, Inc.*, Case No. 13-02637 (SRN/BRT) (D. Minn.).

## STATEMENT OF JURISDICTION

The statutory basis for jurisdiction of this Court to hear this appeal is 35 U.S.C. § 141(c) (as amended by the Leahy-Smith America Invents Act § 7(c)(2), Pub. L. 112-29, 125 Stat. 314 (effective Sept. 16, 2011)).  This is an appeal of a final written decision of the Patent Trial and Appeal Board dated August 8, 2015 and of the decision to deny rehearing dated November 6, 2015, dismissing the covered business method proceedings in case CBM2014-00076.

## STATEMENT OF THE ISSUES

1.   Whether the Board's failure to conduct a proper analysis as required under *Randall Mfg. v. Rea*, 733 F.3d 1355 (Fed. Cir. 2013) taking into account the evidence in the record establishing the knowledge and perspective of a person of ordinary skill in the art requires reversing the Board's determination of non-obviousness of claims 1-6 of the '945 patent, where the evidence of record includes the background section of the patent-at-issue that discloses that MICR readers at the point of sale and the rules for back office conversion were well known;

2.   Whether the Board's failure to apply the proper framework in making its non-obviousness determination under the Supreme Court's holding in *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398 (2007) in determining

that Figure 2 of the '945 patent and U.S. Patent Publication US 2005/0071283 A1 to Randle et al. are not properly combined requires reversal of the Board's determination of non-obviousness of claims 1-6 of the '945 patent;

3.     Whether the overwhelming evidence that Figure 2 of the '945 patent includes MICR reading at the point of sale requires reversing the Board's determination of non-obviousness because its factual finding to the contrary is not supported by substantial evidence;

4.     Whether the Board's understanding of element 4 of Figure 2 showing "Data (Image Optional)" to essentially mean "Data (Image Required)" requires reversing the Board's determination of non-obviousness because it is not supported by substantial evidence; and

5.   Whether the Board's failure to provide a full and reasoned explanation and its omission of relevant factors from its analysis on obviousness violates the Administrative Procedure Act under *In re Sang-Su Lee*, 277 F.3d 1338 (Fed. Cir. 2002) and *Cutsforth, Inc. v. MotivePower, Inc.*, No. 2015-1316, 2016 WL 279984 (Fed. Cir. Jan. 22, 2016) requiring that its decision be vacated and remanded.

## **INTRODUCTION**

This is an appeal from the Board's ultimate finding of non-obviousness of claims 1-6 of U.S. Patent No. 8,311,945 (the "'945 patent") in a covered business method ("CBM") review. In its Final Written Decision, the Board determined that U.S. Bancorp ("U.S. Bank" or "Petitioner") did not demonstrate by a preponderance of the evidence that claims 1-6 were obvious in view of prior art Figure 2 of the '945 patent and U.S. Patent Publication US 2005/0071283 A1 to Randle et al. ("Randle").

In making its determination, the Board legally erred in failing to take into account the uncontroverted record evidence demonstrating the knowledge a person of skill in the art would have when reading Figure 2 of the '945 patent. The Board also committed legal error when it failed to apply the proper framework for determining obviousness under *KSR* in holding that the '945 patent and Randle were not properly combined. The Board also made factual findings that were not supported by substantial evidence. Finally, on a number of points, the Board also failed to articulate a rationale for its findings and holdings as required by the Administrative Procedure Act and this Court's holding in *Lee*.

Petitioner filed a request for rehearing seeking reversal of the Board's decision, or at a minimum a more thorough analysis that addressed the evidence of record and articulated its reasoning providing some rational underpinning to

support the its determination of non-obviousness.  In its Decision Denying

Petitioner's Request for Rehearing, the Board failed to correct its legal or factual

errors, and further refused to provide a more thorough analysis.  Accordingly, U.S.

Bank appeals the Board's decisions and asks this Court to reverse the Board's

determination of non-obviousness and hold claims 1-6 of the '945 patent invalid,

or alternatively, vacate the Board's determination of non-obviousness of claims 1-6

of the '945 patent and remand for further proceedings.

## STATEMENT OF THE CASE

### A.    The State of the Art at the Time of filing of the '945 Patent According to the '945 Patent

The '945 patent relates to methods for processing checks and check

transactions.  *See generally* Appx040-55.  The Background of the Invention section

of the '945 patent provides a summary of some of the relevant developments in

electronic checking that the patentee admits and explains were well-known in the

field prior to the filing of the '945 patent.  Appx049 at 1:20-3:12.  It explains that

the Automated Clearing House Network ("ACH") facilitates electronic transfers

from a payer's account to a payee's account.  Appx049 at 2:5-8.  The ACH

network does not require the physical check or an image of the check to effect

ACH-eligible transactions, as long as it receives the transaction data from the

check converted into digital form.  *Id.* at 2:1-8.  The '945 patent further explains

that the National Automated Clearing House Association ("NACHA") develops

4

operating rules and business practices for the ACH network and electronic payments in a variety of areas. *Id.* at 2:47-53.

The '945 patent explains that since 2000, NACHA rules have allowed for "merchants to convert checks to an ACH debit at the point of purchase ('POP conversion')." *Id.* at 2:54-56. Figure 1 labeled "prior art," and the associated text of the '945 patent discuss the well-known POP conversion rules and process. Appx050 at 4:50-67; Appx042 at Fig. 1. This point of purchase conversion entails a merchant entering the amount of the purchase into the point of sale terminal (referred to as "Key amount" in Figure 1) and passing the check through a magnetic ink character recognition ("MICR") reader located at the point of sale terminal to capture the payer's account number, routing number, and check number (referred to as "Read MICR" in Figure 1). Appx050 at 4:50-58. Because the rules for POP require the merchant to return the check to the buyer, the keying and MICR reading occur at the point of sale, which means that at the time of filing MICR readers at the point of sale were known, existed, and were in use. *Id.* at 4:50-67; Appx042 at Fig. 1.

Optionally, the merchant may also capture a digital image of the check at the point of sale. Appx050 at 4:58-59; Appx042 at Fig. 1, elements 3 and 4. This means that for merchants implementing POP that elect to also make an image scan of a check at the point of sale, a MICR reader and a separate image scanner are

located at the point of sale; or alternately, a single-purpose machine that both scans the image and reads the MICR data is located at the point of sale.

The '945 patent explains that under POP rules, an ACH-eligible transaction can be processed through the ACH network with only the digital information of the check obtained from the merchant at the point of sale. Appx049 at 2:54-63; Appx050 at 4:58-59; Appx042 at Fig. 1. An image of the check does not ever need to be created under POP rules. *Id.*



Appx042 at Fig. 1.

As established by Figure 1 and the POP rules, the '945 patent itself makes clear that <u>prior to the filing of the application</u>, and indeed since 2000, the state of the art included: 1) processing ACH-eligible transactions through the ACH

network based only upon electronic check data, without the need for a physical check or an image of the check; 2) keying the purchase amount and a reading the MICR of the check <u>at the point of sale terminal</u>; and 3) optionally, creating an image of the check at the point of sale.

The '945 patent further explains that after the rules for POP were in effect, NACHA passed rules for an alternative form of check processing, known as back office conversion ("BOC"). Appx050 at 3:5-6. The rules were set to go into effect on March 16, 2007, roughly three months after the filing date of the '945 patent. *Id.* Whereas POP requires the merchant to return the physical check to the buyer, BOC does not. Appx049 at 2:58-60; Appx049-50 at 2:64-3:12. POP requires the merchant to determine whether each check transaction is eligible for ACH processing and thus POP conversion. Appx050 at 4:60-62. BOC simplifies this process by still allowing for ACH processing based on only check transaction data, but without requiring the merchant to return the check to the payer and determine ACH eligibility at the time of sale. The BOC rules require that a digital image of the front of the check be made and retained for two years, in addition to other provisions. Appx050 at 3:5-12.

Figure 2 labeled "prior art," and the associated text of the '945 patent, also discuss BOC rules and processes. Appx051 at 5:1-4; Appx043 at Fig. 2.



*Id.* at Fig. 2.

As with POP, and consistent with ACH transactions, Figure 2 shows that the third party payment processor ("TPPP") does not need the physical check (which is shown as being thrown in the trash can by the merchant in Figure 2), nor does the TPPP need the image of the check to process ACH-eligible transactions (element 4 shows that sending the image to the TPPP is "optional"). Appx042-43 at Figs. 1 and 2. Figure 2, element 10 shows the TPPP can process two types of transactions: ACH and non-ACH transactions. Appx043 at Fig. 2. As discussed above, to process ACH-eligible transactions, an image of the check is not needed. Accordingly, Figure 2 at element 4 shows that data is transmitted to the TPPP, but that it is "optional" whether the check image is also transmitted. *Id.*

8

In the case where an image of the check is not transmitted to the TPPP, only ACH-eligible transactions can be processed through the ACH network. *Id.* In this scenario, only data will be archived by the TPPP. *Id.* Where the merchant elects to send check data and check images to the TPPP, the TPPP can process both ACH-eligible transactions (through the ACH network) and non-ACH transactions (through the paper check processing network in accordance with Check-21). *Id.* at Fig. 2; Appx049 at 2:22-45. In this case the TPPP can archive both the check data and the check images. Appx043 at Fig. 2.

Further, Figure 2 at element 3 shows that the merchant must ensure that three things happen to be in compliance with "Back Office Conversion" rules: 1) Key amount; 2) Read MICR; and 3) Scanned Image. *Id.* at Fig. 2, element 3. While the patent does not explicitly say that "Key amount" happens at the point of sale terminal, that is the logical conclusion; the merchant keys the amount of the purchase into the register, just as with POP as shown in Figure 1. Appx042-43 at Figures 1 and 2; Appx050 at 4:52-54. The patentee uses the term "Read MICR" in Figure 2, just as it does in Figure 1 for POP conversion, where MICR reading occurs at the point of sale terminal. Appx042-43 at Figs. 1 and 2; Appx050 at 4:50-58. Finally, the patentee uses the term "Scanned Image," just as it does in Figure 1 for POP conversion (albeit scanning is optional in Figure 1) to refer to the step of obtaining a digital image of the check. Appx042-43 at Figs. 1 and 2.

However, where the patentee states that if a merchant performs an image scan of the check under POP, it occurs at the point of sale terminal; the patentee explains that under BOC, the image scan occurs in the back office of the merchant: merchants "scan their checks in a back office, typically at the end of the day. The scanners capture an image of the check and store the image with the MICR data from the check. A file containing this information is then transferred to a bank or third party payment processor." Appx049-50 at 2:67-3:4. The '945 patent similarly explains that Figure 2 "shows a prior art system for converting a check in the merchant's back office. With this system, the merchant scans their checks in batches in a back office, instead of at the purchase terminal." Appx051 at 5:1-4. No further discussion of Figure 2 is provided in the '945 patent.

Thus, Figure 2 discloses that while the merchant may scan the check to create a check image in the merchant's "back office, instead of at the purchase terminal," the "Key amount" and "Read MICR" still occur at the point of sale terminal. At a minimum, Figure 2 teaches that "Key amount" and "Read MICR" can occur at the point of sale terminal.

### B.    The Alleged Invention of the '945 Patent

The methods of the '945 patent are directed to processing paper checks according to BOC rules, which are promulgated by NACHA. The patentee's allegedly inventive process includes dividing:

into two independent paths the processing of a data file representing a check and the digital image of a check. The data files and image files are separated both in time and in space, with the data files being used to promptly initiate the transfer of funds to and from appropriate accounts, while the paper checks, at a remote location and typically lagging in time, are scanned to create digital image files and deposited as an image or substitute check if deemed ACH ineligible.

Appx040 at Abstract.

Claim 1, which is illustrative, is reproduced below:

1. A method for processing paper checks, comprising:

    a) electronically receiving a data file containing data captured at a merchant's point of purchase, said data including an amount of a transaction associated with MICR information for each paper check, and said data file not including images of said checks;

    b) after step a), crediting an account for the merchant;

    c) after step b), receiving said paper checks and scanning said checks with a digital image scanner thereby creating digital images of said checks and, for each said check, associating said digital image with said check's MICR information; and

    d) comparing by a computer said digital images, with said data in the data file to find matches.

Appx053 at 10:53-67.

Claims 2, 3, and 6 depend from claim 1. Claim 2 includes a limitation directed to exception processing. Appx054 at 11:1-5. Claim 3 specifies that the "comparing" of step d of claim 1 is done based on MICR information. *Id.* at 11:6-7. Claim 6 includes a limitation for storing an expected date for receiving the paper check, and performing step c of claim 1 on or after the expected date. *Id.* at 12:21-28.

11

Independent claim 4is generally the same as claim 1 for ACH-eligible

transactions, but includes a limitation for how ACH-ineligible transactions are

handled at step f of claim 4.  *Id.* at 11:8-12:2.

Independent claim 5 is also generally the same as claim 1, but it includes

methods for processing paper checks for more than one merchant, where the data

for each merchant is saved in association with a merchant identifier.  *Id.* at 12:3-20.

## C.      The Petition for Covered Business Method Review

U.S. Bank filed the Petition for Covered Business Method Patent Review on

February 19, 2014.  Appx059-144.  While U.S. Bank sought review for

unpatentability based on both 35 U.S.C. §§ 101 and 103, only the § 103 grounds

are relevant for this appeal.  Specifically, U.S. Bank sought review based on

obviousness in view of the background section of the '945 patent itself and U.S.

Patent Publication US 2005/0071283 A1 to Randle et al. (published March 31,

2005) ("Randle").  Appx285-339.

### a.      The '945 Patent

As discussed in Section A above, the '945 patent provides a "Background of

the Invention" section, in which it describes ACH processing, POP, and BOC

generally.  Further, the '945 patent includes Figures 1 and 2 labeled "prior art,"

which generally show implementations of POP and BOC respectively.  Appx042-

43 at Figs. 1 and 2.  The '945 patent also provides brief descriptions of Figures 1

12

and 2 at columns 4:50-67 (for POP and prior art Figure 1) and 5:1-4 (for BOC and prior art Figure 2).  Appx050-51.  The Petition includes a discussion of the entire background section of the '945 patent, including ACH, NACHA, Check-21, POP, and BOC to show that the claims of the '945 patent are obvious.  Appx068-71.  U.S. Bank focuses on Figure 2 of the '945 patent for the purposes of obviousness because Figure 2 depicts "prior art" <u>BOC</u> processing, to which the claims of the '945 patent are directed.  However, the entirety of the admitted prior art disclosed in the '945 patent is addressed in the Petition.  The prior art discussion of the '945 patent teaches keying in a purchase amount and performing a MICR read at the point of sale terminal.  *See* Section A *supra*.

    b. <u>Randle</u>

   Randle, entitled "Quality Assured Secure and Coordinated Transmission of Separate Image and Data Records Representing a Transaction," was filed April 12, 2004, and published March 31, 2005.  Appx286.  Randle is directed to a "system and method of securely processing an electronic transaction in which an image and data associated with the transaction are separately processed."  Appx286 at Abstract.  Randle discloses a bank (i.e., a TPPP) performing image scanning:  "[i]n the present invention, the deposit bank **4** captures the check and related information, such as by a scan **5** to create an image of the front and back of the check and collects information such as the payee name, bank, payee's account

number, the amount of the check and the MICR data." Appx320 ¶ 80. Figure 1 of

Randle shows that a paper check is received and scanned. Appx287 at Fig. 1. It

also discloses a data file and a separate image plus data file processed separately.

*Id.* Randle discloses that "[a]fter the scan, . . . the transaction data file and a

coordinated image plus data file 5a, comprising the separate data file 10 and image

plus data file 11 are separately manipulated and processed for settlement, payment

and clearing in the paths shown as 12 and 13." Appx320 ¶ 80. Randle explicitly

teaches that "[t]he invention offers overall efficiency of check processing by

potentially eliminating the physical transportation of paper checks and allowing

immediate transfer of transaction data related to the paper check followed by a

transmission of an image linked to the data." *Id.* ¶ 77.

In the Petition, U.S. Bank acknowledges that "Figure 2 and Randle do not

expressly disclose that the image is scanned after the merchant's account is

credited," which is limitation "c" of claim 1. Appx116. However, U.S. Bank

explains that switching the order of crediting and scanning would be obvious in

view of Figure 2 of the '945 patent and Randle. Appx116; Appx121-27.

### D.    Institution Decision

In response to the arguments presented in the Petition based on the evidence

provided above, the Board determined that "Petitioner has shown that it is more

likely than not that claims 1–6 are unpatentable as obvious over the combination of

14

Figure 2 of the '945 patent and Randle." Appx164. With regard to limitation "c" of claim 1, which recites <u>after</u> crediting an account for the merchant, "receiving said paper checks and scanning said checks with a digital image scanner," the Board states that it is persuaded that "merely reversing the order of two steps is *prima facie* obvious, and that there is no new or unexpected result attained by changing the order between the scanning and crediting steps." Appx163. The Board reasons that:

> Specifically, Figure 2 suggests in blocks 3 and 4 that scanning and transmitting the scanned image to the TPPP is optional; and in block 10 the image is archived by the TPPP. Thus, based on these teachings, it follows that the check image would be scanned either by the merchant or the TPPP, that both techniques were known, and that it would have been within the abilities of one of ordinary skill to implement the techniques in any order, as two options is the epitome of a finite number of options.

> *Id.*

Because the known need to quickly credit the merchant provides a sufficient rationale to carry out the known scanning and crediting limitations, the Board is persuaded that the order of scanning and crediting could be performed in any order that would expedite the process. *Id.*

## E.    Board Decision

Despite its initial analysis, the Board in its Final Written Decision concludes that Petitioner did not prove by a preponderance of the evidence that claims 1-6 of the '945 patent are unpatentable. Appx028.

15

a.     <u>Claim Construction</u>

In its Decision, the Board provides claim constructions for certain terms for the first time. Specifically, the Board construes "a data file containing data captured at a merchant's point of purchase" from limitation "a" of the independent claims to mean "a data file containing data captured at a merchant's point-of-sale terminal." Appx013.

The Board further construes method claims 1, 4, and 5 as requiring that the steps be performed in the sequential order recited. *Id.* Specifically that "receiving said paper checks and scanning said checks" be performed <u>after</u> the step of "crediting an account for the merchant." *Id.*

b.     <u>Level of Skill in the Art</u>

The Board determines that the person of ordinary skill in the art "would have ten years of experience in electronic check processing and five years of related ACH processing experience." Appx010. The Board further determines that Patent Owner's declarant Mr. Saffici meets the recited requirements of a person of ordinary skill in the art. *Id.*

c.     <u>The Board's Decision</u>

The Board states that it took the Graham factors into consideration in reaching its decision, including basing its factual determinations after resolving: 1) the scope and content of the prior art; 2) any differences between the claimed

subject matter and the prior art; 3) the level of skill in the art; and 4) where in evidence, so-called secondary considerations. Appx014 (citing *Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966)). However, the Board expressly fails to take into account that the '945 patent admits that POP is prior art and that it predates BOC. The Board refuses to address in its Decision that the person of ordinary skill in the art, as defined by the Board, and agreed to by the parties, has an understanding of POP procedures and would be aware that POP requires MICR reading at the point of sale terminal. Accordingly, MICR readers at the point of sale were well-known and in use at the time of filing. A person of skill would understand that a merchant using BOC processes can (and likely would) take advantage of existing MICR readers at the point of sale to capture MICR data in the same way that merchants using POP processes use MICR readers to capture MICR data at the point of sale. The Board never addresses or even acknowledges this argument.

The Board also fails to provide clear reasoning to support its findings. The Board states that it was not persuaded that the three separate boxes at element 3 of Figure 2 disclose separate steps that can be performed separately "for the reasons discussed above." Appx022. However, nowhere in its Decision preceding this statement does the Board discuss this argument, making it impossible to glean the reason why this argument was not persuasive.

Similarly, the Board dismisses Petitioner's arguments that element 4 of Figure 2 shows the possibility for two separate data paths by showing that the MICR data without the check image can be sent to the TPPP for processing "for the reasons discussed above." Appx022-23. But again, it is not clear what the Board is referring to as the specific reasons why Petitioner's argument was not persuasive.

Instead, the Board states that it credits the testimony of Mr. Saffici that the '945 patent says that in traditional BOC, the merchant scans their checks in a back office, not at the point of purchase. Appx023. However, the Board fails to address Petitioner's argument that "scanning" in both the vernacular of the art, and the '945 patent refers to <u>image</u> scanning, while "reading" refers to <u>MICR</u> reading. Thus, Mr. Saffici's statements are consistent with two separate data paths where the MICR data is read at the point of sale, but the checks are scanned to create check images in the merchant's back office.

The Board further fails to explain why it credits the above-referenced testimony of Mr. Saffici, but refuses to credit the direct testimony of Mr. Saffici that a person of skill understands that the BOC rules do not require a check image capture to occur at the same time as MICR capture. Appx020 (citing Appx387 at 48:12-18). The Board fails to address Petitioner's arguments that Mr. Saffici also testified that the BOC rules themselves contemplate that the MICR information can

18

be collected separately at the point of sale, followed later in time by a check image scan as evidence of what a person of skill would know about BOC. *Id.* (citing Appx393-96 at 54:22-57:19). While the Board discusses these arguments with regard to whether Figure 2 shows the TPPP can scan the check, the Board does not address these arguments when it considers whether the evidence of record shows that Figure 2 satisfies step "a" of claim 1. Appx019-23.

In its Decision, the Board appears to agree with Petitioner that Randle discloses a non-merchant receiving and scanning checks. Appx024-25. However, with regard to receiving and scanning checks <u>after</u> crediting a merchant's account, the Board retreated from its initial analysis in its Institution Decision and found that Petitioner has not provided sufficient support to show the rearranging of steps would be obvious. Appx027. Instead, the Board states in conclusory fashion that "Patent Owner has provided sufficient explanation to outweigh" the general principle that changing the order of steps has some basis in case law. *Id.* The Board further concludes that "the reason for combining Figure 2 and Randle" offered by Petitioner is not sufficient to overcome Patent Owner's explanations, "because the main rational underpinning is based on Petitioner's mischaracterization of Figure 2." *Id.* Again, the Board fails to provide clearly articulated reasoning for its decision, including what alleged mischaracterization of Figure 2 it refers to and how that mischaracterization nullified Petitioner's arguments.

**F.    Petitioner's Request for Rehearing of the Final Written Decision**

In its Request for Rehearing, Petitioner asks the Board to reconsider issues related to two of its findings.  <u>First</u>, U.S. Bank asks the Board to reconsider its finding that Figure 2 of the '945 patent does not disclose capturing MICR information and check amount at the point of sale.  Specifically, Petitioner argues that the Board overlooked or misapprehended the evidence in the record that Figure 1 irrefutably shows capturing MICR data at the point of sale, and that a person of ordinary skill in the art would read Figure 2 with the knowledge of Figure 1 and understand that MICR capture can occur at the point of sale.  Appx656-58.

Petitioner also asks the Board to reconsider its evidence that Mr. Saffici admits in his direct testimony that the BOC rules do not require MICR capture and image capture to be concurrent, demonstrating what a person of skill would know about BOC.  At a minimum this testimony should discount his testimony that Figure 2 shows that data capture and image capture _must_ occur together.  Appx656-59.

Finally, Petitioner argues that the Board fails to address Petitioner's arguments that a person of ordinary skill in the art would understand "read" or "reader" to refer to MICR capture, and "scan" or "scanning" to refer to image capture consistent with the vernacular of the industry and the '945 patent.  Petitioner argues that the Board gave too much weight to Mr. Saffici's unsupported testimony that in his opinion, Figure 2 shows all data must be collected together in the

20

merchant's back office, while failing to consider or even address Petitioner's arguments.

Second, Petitioner asks the Board to reconsider its finding that it would not be obvious to a person of ordinary skill in the art to credit a merchant's account before receiving/scanning checks. Appx651-71. Petitioner attempts to clarify again that it never argued that BOC does not require an image of the check, but rather that for ACH-eligible transactions, BOC (and Figure 2 as an implementation of BOC) does not require the TPPP to receive the physical check or an image of the check to process those transactions. Appx665-66. Petitioner also attempts to clarify that it was not relying on Figure 2 to show a non-merchant scanning the check, but rather was relying on Randle for that teaching. Appx666-67. Thus, Petitioner never mischaracterized Figure 2.

Petitioner argues that consistent with its first issue for rehearing, Figure 2 discloses MICR capture at the point of sale to a person of ordinary skill. Appx667-68. The Board misapprehended or overlooked the evidence of record that when Figure 2 was read properly, the Board discounted controlling case law that rearranging the order of steps is obvious, in favor of Mr. Saffici's inconsistent testimony that Figure 2 requires data and image collection to occur simultaneously and thus a scanned image of a check must be collected before crediting the merchant's account. Appx667-70.

### G.    Decision Denying Rehearing

The Board denied Petitioner's request for rehearing.  Appx031-38.  In its Decision on Rehearing, the Board again refuses to address or even acknowledge Petitioner's unrefuted arguments that Figure 1 discloses MICR capture at the point of sale and that a person of skill in the art has knowledge of POP (as shown in Figure 1) and brings the knowledge of existing MICR readers at the point of sale to bear when determining what Figure 2 discloses.  *Id.*

Similarly, the Board refuses to address Petitioner's arguments that the written description for Figure 2 only uses the term "scan," which is consistently used in the '945 patent to refer to image scanning, and not MICR reading.  The Board never addresses or even acknowledges any of these arguments, yet insists that it "considered Petitioner's arguments concerning the possibility of using an MICR reader at the point of sale to obtain the MICR information," but were not persuaded.  Appx034.

The Board further states that "other than attorney argument, Petitioner did not proffer evidence to refute the testimony of Mr. Saffici regarding his interpretation of the written description of Figure 2."  Appx035.  This statement demonstrates that the Board refuses to consider Petitioner's arguments based on the undisputed disclosure of  the '945 patent itself, including Figure 1, as well as the consistent use of "read" versus "scan" in the '945 patent; and Mr. Saffici's statements that BOC does not require data capture and image capture to occur simultaneously.

With regard to Petitioner's second issue in its request for rehearing, the Board finally provides a modicum of clarity in stating that Petitioner's "mischaracterization" of Figure 2 that it was referring to in its Final Written Decision was the meaning of "Data (Image Optional)" at element 4 of Figure 2. Appx036. The Board, however, refuses to bring any clarity to how Petitioner's reading of element 4 of Figure 2 is incorrect, much less how it is a "mischaracterization" of Figure 2, as opposed to simply a statement of exactly what element 4 shows. *Id.* The Board also refuses to explain how this "mischaracterization" factors into its reasoning in nullifying Petitioner's arguments; instead the Board directs Petitioner to pages 16-27 of its Final Written Decision. Appx036.

The Board holds that it was not persuaded by Petitioner's understanding of "Data (Image Optional)" in Figure 2 to mean "that the data file being sent to the TPPP does not have to contain an image." Appx036. (internal citations and quotations omitted). In its Final Written Decision on this point, the Board finds that the "Data (Image Optional)" disclosure in Figure 2 means "that scanning the images is a required part of Figure 2's prior art Back Office Conversion process and not at all optional." Appx020-21 (omitting internal citations and quotations) (emphasis added).

Accordingly, the Board seems to find that Figure 2 at element 4, which explicitly shows that "Data (Image Optional)" is sent to the TPPP, discloses "Data (Image Required)."  The Board provides zero insight into its rationale for taking the extraordinary measure of not only reading explicit disclosure out of Figure 2 of the '945 patent, but replacing that explicit disclosure with its exact opposite.

Finally, the Board held that Petitioner's arguments that it is obvious in light of the '945 patent and Randle to receive/scan checks <u>after</u> crediting a merchant account is unpersuasive "because it is unsupported attorney argument." Appx037.  The Board fails to address the case law presented by Petitioner or to weigh that case law against the arguments of Patent Owner that it credited, which consist only of attorney argument.  Appx031-38.

## <u>SUMMARY OF THE ARGUMENT</u>

The Board erred in its ultimate determination of non-obviousness in several respects.  <u>First</u>, the Board committed legal error in disregarding this Court's precedent requiring the Board to consider the knowledge of skill in the art at the time of the invention.  In *Randall*, this Court held that such an approach was forbidden, and determined that the Board's failure to address and apply record evidence demonstrating the knowledge of a person of ordinary skill in the art constituted error.  In the present case, the Board ignored uncontroverted record

evidence that a person of skill would know that existing MICR readers at the point of sale could be used in BOC, and that the BOC rules do not require MICR capture and image capture to occur concurrently.  The Board's failure to consider such evidence and imbue the person of skill with such knowledge was plainly prejudicial, and requires reversal.

Second, the Board also erred in its findings that Figure 2 does not disclose: 1) MICR capture at the point of sale; and 2) that a merchant may send check data without image data to the third part payment processor.  The evidence of record contradicts the Board's findings and demonstrates that it lacks substantial support from the record.

Third, the Board compounded its error by failing to apply the Supreme Court's required framework for making obviousness determinations as set out in *KSR*.  The Board improperly ignored the common sense a person of skill would employ when combining known technologies.  In doing so, the Board failed to appreciate that scanning checks to create check images after crediting a merchant account would be obvious to a person of skill combining Figure 2 and Randle.

Finally, the Board erred in failing to articulate its factual findings and rational for its non-obviousness determination as required by the Administrative Procedure Act § 706; *In re Sang-Su Lee*, 277 F.3d 1338, 1343-44 (Fed. Cir. 2002).

# ARGUMENT

## I.     Standard of Review

The Board's determination of obviousness under 35 U.S.C. § 103 is reviewed

*de novo*, while its underlying factual determinations are reviewed for substantial

evidence.  *In re Cuozzo Speed Techs., LLC*, 793 F.3d 1268, 1280 (Fed. Cir. 2015)

(citing *In re Baxter Int'l, Inc.*, 678 F.3d 1357, 1361 (Fed. Cir. 2012)).  Substantial

evidence means "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion."  *In re Abbott Diabetes Care Inc.*, 696 F.3d 1142,

1148 (Fed. Cir. 2012) (citing *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229

(1938)).  Factual findings underlying an obviousness conclusion include:  1) the

scope and content of the prior art; 2) the differences between the claimed invention

and the prior art; 3) the level of ordinary skill in the art; and 4) any objective indicia

of non-obviousness.  *Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966)).

## II.     The Board Erred in Its Determination of Non-Obviousness[1]

The Board erred legally and factually in determining that the claims of the

'945 patent are not obvious in light of Figure 2 and Randle.  The Board legally

---

[1] The Board's determination of non-obviousness appears to have been based solely on its findings that Petitioner fails to show MICR capture at the point of sale or that a merchant's account can be credited before the TPPP receives/scans checks. The Board did not state that it found any other elements of the claims missing from Figure 2 and/or Randle.  Accordingly, Petitioner does not address any other elements, but reserves the right to so if challenged by Patent Owner.

erred in failing to take into account the knowledge a person of skill would have of both POP and BOC. The Board's failure resulted in the Board erroneously finding that Figure 2 does not disclose MICR capture at the point of sale, with image scanning being performed later in time in the merchant's back office. The Board's finding on this point was also not supported by substantial evidence.

The Board's error led it to determine that Petitioner did not show by a preponderance of the evidence that Figure 2 discloses "electronically receiving a data file containing data capture at a merchant's point of purchase, said data including an amount of a transaction associated with MICR information for each paper check, and said data file not including images of said check," as recited in independent claims 1, 4, and 5 of the '945 patent. Appx053 at 10:55-59 (claim 1); Appx054 at 11:9-14 (claim 4); *Id.* at 12:4-9 (claim 5).

This error also appears to have led in part to the Board determining that Petitioner did not show by a preponderance of the evidence that a person of skill would find it obvious to scan checks <u>after</u> crediting a merchant's account in view of Figure 2 of the '945 patent and Randle, as recited in independent claims 1, 4, and 5 of the '945 patent. Appx053 at 10:61-65 (claim 1); Appx054 at 11:20-23 (claim 4); *Id.* at 12:14-18 (claim 5). The Board's reasoning relating to this limitation was also factually flawed because it was not supported by substantial evidence to the extent it was based on a reading of Figure 2 that shows that a merchant <u>must</u> send image data

with check data to the TPPP.   Because of the Board's erroneous findings, it

determined that Figure 2 and Randle would not be obvious to combine to a person a

person of skill because both references <u>require</u> image scans before crediting.  The

Board's erroneous non-obviousness determination requires reversal.

A.    **The Board Erred in Determining That a Person of Skill in the Art Would Not Read Figure 2 of the '945 Patent to Include MICR Capture at the Point of Sale**

The Board erred as a matter of law in failing to account for the evidence of

record that shows the level of skill a person in the area would have when the Board

determined that Figure 2 does not disclose MICR capture at the point of sale,

followed later in time by image scanning in the merchant's back office.  The Board's

finding is also not supported by substantial evidence and should be reversed.

1.    **The Board Erred as a Matter of Law Because it Disregarded the Level of Skill in the Art in Determining Whether Figure 2 Disclose MICR Capture at the Point of Sale**

The Board's obviousness determination should be reversed for legal error

because it failed to apply the correct legal framework required by governing Federal

Circuit and Supreme Court law.  The Board is required to assess facts according to

the framework provided in *Graham*, including assessing:  1) the scope and content

of the prior art; 2) the differences between the claimed invention and the prior art; 3)

the level of ordinary skill in the art; and 4) any objective indicia of non-obviousness.

*Graham*, 383 U.S. at 17-18.  The Board committed legal error in failing to address

the level of skill in the art.  The Supreme Court in *KSR* provided a framework for determining obviousness whereby prior art is <u>required</u> to be read in context, taking into account "demands known to the design community," "the background knowledge possessed by a person having ordinary skill in the art," and "the inferences and creative steps that a person of ordinary skill in the art would employ." *Randall Mfg. v. Rea*, 733 F.3d 1355, 1362 (Fed. Cir. 2013) (citing and quoting *KSR*).

In *Randall*, the court held that the Board failed to conduct the proper analysis because it focused too narrowly on the prior art references, while ignoring the additional evidence in the record to show the knowledge and perspective of a person of skill in the art.  *Id.*  The additional record evidence was prior art in the area to show the knowledge of a skilled artisan.  *Id.* at 1363.  The evidence was not produced to change the obviousness combination, "rather, the references constitute important evidence of the state of the art and the context in which the [obviousness] combination should be evaluated."  *Id.*  The *Randall* court further held that the Board's failure to consider the evidence of what a person of skill would know was "plainly prejudicial."  *Id.*

The Board made the same error in the present case, but the error is even more glaring here because the evidence the Board disregarded not only comes from one of the patents used in the obviousness combination, but is the <u>patent under review</u> that contains the <u>Patent Owner's own admissions of what a person of skill in the art</u>

would know.  The Board's failure to take into account the uncontroverted record

evidence demonstrating the knowledge of one skilled in the art is plainly prejudicial

to U.S. Bank because it resulted in the Board finding that Figure 2 does not disclose

MICR capture at the point of sale.

    The Board steadfastly refused to acknowledge, discuss, or take into account

the uncontroverted fact that a person of ordinary skill in the art would know that

MICR readers were being used at the point of sale to perform MICR reads of checks

prior to the filing of the '945 patent.  The '945 patent explains that "Fig. 1 shows a

prior art system and method for converting a check at the point of purchase (POP

conversion)."   Appx050 at 4:50-51.



Appx042 at Fig. 1.

    Element 3 of Figure 1 shows what a merchant has to do at the "Point of

Sale."  One thing that must happen at the point of sale is "Read MICR."

The Board determined that the person of skill in the art "would have ten years of experience in electronic check processing and five years of related ACH processing experience."  Appx010.  Under the Board's definition, a person of skill would certainly have an understanding of POP rules and procedures, and would know that MICR readers had to be at the point of sale to take advantage of POP. The question the Board was required to address was the knowledge a person of skill in the art would have when reviewing Figure 2 and the associated text of the '945 patent.  Because the '945 patent itself provides this knowledge, there can be no question that a person of skill reading Figure 2 of the same patent would know that MICR readers were used at the point of sale and that they could be used for BOC in the same exact way that they are used for POP to perform the exact same function.

While the above evidence alone should have precluded the Board from finding that Figure 2 does not disclose MICR capture at the point of sale to a person of skill, the Board also had before it evidence provided by Mr. Saffici about what a person of skill in the art would understand about BOC when reviewing Figure 2.  This is critical evidence that the Board failed to consider because it demonstrates what a person of skill would know about BOC, beyond the scant teaching provided in the '945 patent.

A person of skill, as defined by the Board, would have been well aware of the BOC rules. This is not a situation where the patent is providing the only, the first, or new disclosure for something, but rather the '945 patent is providing a short description of a process that is governed by rules that were available and known to those skilled in the art at the time of filing. The '945 patent admits as much, as it must. Appx049-50 at 2:64-3:12. Accordingly, the Board erred in failing to take into account the <u>supported testimony</u> of Mr. Saffici– beyond the '945 patent Figure 2 and associated text – demonstrating what a person of skill in the art would know about BOC.

Mr. Saffici admits in his <u>direct testimony</u> that the BOC rules do not require MICR capture and image capture to be concurrent. Appx503-05. The Board determined that Mr. Saffici was skilled in the art and credits him with understanding electronic and ACH processing, including BOC. Appx009-10. Mr. Saffici's direct testimony is that as a skilled artisan, he understands BOC to allow for check data capture to happen at a different time than check image capture. Appx0503-05. Thus, a person of skill reading Figure 2 would know that BOC does not require MICR reading and image scanning to happen at the same time, and that MICR readers existed at the point of sale terminals.

Mr. Saffici's testimony on this point was not simply his own unsupported opinion. For this fact, Mr. Saffici quotes from a report by "Celent, a well-

32

respected research and consulting firm focused on the application of information technology in the global financial services industry." *Id.* (quoting Ex. 2027). The Board erred when it refused to give weight to the supported direct testimony provided by Mr. Saffici in determining the knowledge of one of skill in the art.

Petitioner also provided evidence that the BOC rules themselves contemplate MICR reading happening at the point of sale and image scanning happening at a later time. Appx267-69 (citing and discussing Appx548). Mr. Saffici agrees that MICR capture at the point of sale is contemplated by the BOC rules. Appx393-96 at 54:22-57:19. While the Board stated that Petitioner provided this evidence and made these arguments, the Board failed to address these arguments, or take them into account when determining the knowledge of one of skill in the art. Appx019-23.

The Board erred in failing to imbue the person of skill with the knowledge discussed above based on the Patent Owner's admissions in the '945 patent, the BOC regulations (submitted into evidence by Patent Owner), the Patent Owner's Declarant's direct testimony, supported by a "well-respected report," and the Patent Owner's Declarant's deposition testimony. Instead, the Board disregarded all of this evidence in favor of the unsupported and contradictory opinion of Mr. Saffici that in his view Figure 2 shows that obtaining an image scan and a MICR read in the merchant's "back office." *Id.*

In failing to account for the knowledge of one of skill in the art reviewing Figure 2, the Board has found that Figure 2 shows something that not only a person of skill would find implausible, but that a lay person would find implausible. The Board found that Figure 2 shows an implementation whereby a buyer hands a merchant a check at the point of sale terminal, and the merchant simply takes the check and sticks it in the terminal drawer, without keying the amount of the check into the terminal, and without passing the check through a MICR reader. Instead, under the Board's finding of what Figure 2 discloses, without doing anything with the check at the point of sale, the merchant waits until the end of the day to gather up all of the checks that were received that day, and only then - and only in the merchant's "back office" - does the merchant key in the amount of the check and make an image scan and MICR read of the check. The Board finds that this is the <u>only</u> possibility disclosed in Figure 2. Appx033-36.

The Board failed to account for the uncontroverted evidence in the record, evidence that was provided by Patent Owner or its Declarant, that a person of ordinary skill at the time of filing reading Figure 2 would know that merchants could take advantage of existing MICR readers at the point of sale when implementing BOC as disclosed in the background section of the '945 patent. Failing to take these facts into account resulted in the Board narrowly looking at Figure 2 as though the only information a person of skill in the art would have was the couple of sentences of text related to Figure 2. The Board's failure to account for the knowledge of a person

of skill is plainly prejudicial.  Its finding that Figure 2 does not disclose obtaining

MICR information from a paper check at the point of sale should be reversed.

**2.    The Board's Finding That Figure 2 of the '945 Patent Does Not Disclose MICR Capture at the Point of Sale is Not Supported by Substantial Evidence**

In addition to the legal errors described above that warrant reversal of the

Board's determination that Figure 2 does not disclose MICR capture at the point of

sale, the Board's analysis is also factually flawed.

Element 3 of Figure 2 is labeled "**Merchant** – Back Office Conversion."

Appx043 at Fig. 2.  There is no line break between "Merchant" and "Back Office

Conversion."  *Id.*  Three tasks are identified that a merchant must do under back

office conversion rules:  Key amount; Read MICR; and Scanned Image.  *Id.*  This

Figure <u>does not say where</u> these things have to be done, nor does it say that "Read

MICR" and "Scanned Image" must happen together.  In fact, the Figure shows that

these are two separate tasks.



Appx043 at Fig. 2.

35

In contrast, element 3 of Figure 1 says "Merchant," followed by a line break. Appx042 at Fig. 1. Below the line break, the patentee specifically identifies where the three tasks must take place: at the "Point of Sale." *Id.* Whereas Figure 2 at element 3 identifies the type of processing the merchant is using, i.e., "Back Office Conversion," importantly, Figure 1 at element 3 does not indicate that the merchant is using "Point of Purchase Conversion." Appx042-43 at Figs. 1 and 2. Instead, the patentee elects to identify the location where the merchant must perform the tasks: at the "Point of Sale." *Id.* at Fig. 1.



Thus, while element 3 of Figure 1 is properly read to indicate where the three tasks must occur, element 3 of Figure 2 is not. The Board erred when it found otherwise.

The Board relied on the description of Figure 2 that says, "[w]ith this system, the merchant scans their checks in batches in a back office, instead of at the purchase terminal." Appx034 (citing Appx051 at 5:1-4). The Board concluded

that this language "clearly conveys that with respect to the disclosure in Figure 2, the merchant scans the checks in the back office and not at the purchase terminal." *Id.* However, the Board failed to state why or how this language <u>necessarily</u> <u>includes</u> the "read MICR" task that the merchant must perform. There is nothing in the Figure or in the description that justifies the Board's finding that the "scanning" that occurs in the merchant's back office must also include the MICR read.

The Board stated that Petitioner's arguments are unpersuasive "because they attempt to infer something beyond the unequivocal description of Figure 2 as a system for converting a check in the merchant's back office." Appx035. This finding is not supported by substantial evidence because Figure 2 does <u>not</u> show a system for "converting a check" "in the merchant's back office." It shows an implementation of "Back Office Conversion," where the patentee has specified that the <u>image scan</u> of the check takes place in the merchant's back office, but says nothing about where or when the MICR read must happen.

The only evidence the Board relied upon for its finding is the testimony of Mr. Saffici. Appx035 (citing Appx526 ¶ 46). However, Mr. Saffici's ultimate conclusion that "Figure 2 performs MICR and image capture in the back office, not at the point of purchase," is only based on the '945 patent. Appx526 ¶ 46. He explains that Figure 2 describes "Merchant Back Office Conversion and identifies

37

the scanning to create an image." *Id.* He makes no mention of the "read MICR."

*Id.* He then explains that the background section of the patent states, "which

merchants scanned their checks in a back office, typically at the end of a day. The

scanners capture an image of the check and store the image with the MICR data

from the check." *Id.* That is his entire support and analysis for his conclusion.

The fact that the scanners capture an image of the check and store the image with

the MICR data from the check cannot fairly be read to require that the MICR read

is also performed at the same time and in the same place as the image scan.

At least two other possibilities exist: 1) the image scan includes the MICR

data and so it is necessarily associated with the image, but a MICR read could still

be performed at the point of sale; and/or 2) the image scan is performed in the back

office and then the data is associated with corresponding MICR data from the

MICR read that occurs at the point of sale. The Board's finding that Figure 2 and

its description, and Mr. Saffici's understanding of it is not supported by substantial

evidentiary support and should be reversed.

### B.    The Board Erred in Ignoring Evidence That a Person of Skill in the Art Would Find it Obvious to Receive/Scan Checks After Crediting a Merchant Account

The Board erred in determining that it would not be obvious to a person of

skill reviewing Figure 2 and Randle for a TPPP to credit a merchant account for

ACH eligible transactions before receiving/scanning images of checks. The

Board appears to base its determination on its erroneous understanding of Figure 2. To the extent this is the Board's rationale, it requires reversal. To the extent the Board found that the combination of Figure 2 and Randle is not proper, it failed to apply the proper framework under *KSR* and should be reversed.

> **1.    To the Extent the Board Based Its Finding on Its Failure to determine that Figure 2 Discloses MICR Capture at the Point of Sale, the Board Erred as a Matter of Law**

In its Final Written Decision, the Board stated that it agrees with Patent Owner's contention that "Figure 2 discloses a back office conversion process for converting a paper check into an ACH transaction by scanning the paper check in the back office, and only the transmission of the scanned check image from the back office to the TPPP is optional." Appx027. Based on this legally and factually erroneous reading, the Board seems to be concluding (though it does not directly say) that Figure 2 cannot be combined with Randle because Figure 2 requires that the check be scanned before settlement. Appx026; *see also* Appx033-36.

First, this finding does not make logical sense. If the check "conversion" happens in the back office "by scanning the paper check," the Board seems to be finding that there is no separate MICR read at all. Instead, the image scan in the back office must obtain both the image and the MICR data together. However, as the Board acknowledges, the merchant can elect to send the check data without the

image data to the TPPP.  Appx027.  Under the Board's reading, this would require the Merchant to carry out additional steps, i.e., extracting the image data from the MICR data and amount of the check to send to the TPPP.  Such a finding is erroneous because there is no evidence or support in the '945 patent for why a merchant would do that.

In contrast, under Petitioner's reading, a merchant could use existing MICR readers to read the MICR information at the point of sale and send it to the TPPP – without the image data – so the TPPP could process checks it "decisions" to be ACH-eligible through the ACH network.  Appx043 at Fig. 2.  Then the merchant at the end of the day, or some other time, could scan the checks in the back office and send the image data to the TPPP to process non-ACH transactions through the paper check processing network.  *Id.*

Second, for the reasons provided in Sections II. A. 1. and II. A. 2. above, the Board's determination that the MICR read could not be performed at the point of sale before the image scan occurs in the merchant's back office is legally and factually erroneous.   Thus, to the extent the Board finds that it is not obvious to receive/scan checks after crediting in view of Figure 2 and Randle because Figure 2 does not disclose MICR capture at the point of sale, the Board should be reversed.

**2.    To the Extent the Board Finds That Figure 2 Does Not Disclose That Sending an Image of the Check with Check Data to the TPPP Is Optional That Finding Is Not Supported by Substantial Evidence**

Contrary to the plain reading of Figure 2, the Board effectively finds that Figure 2 does not disclose that sending an image of the check with the check data to the TPPP is optional. Appx036. In its Decision Denying Petitioner's Request for Rehearing, the Board stated that Petitioner's understanding of "Data (Image Optional)" to mean that the data file sent to the TPPP does not have to contain the check image file is not persuasive. *Id.* The Board provided no rational analysis for this finding. Such analysis is necessary given that Petitioner's recited understanding of element 4 is exactly what Figure 2 shows.



Appx043.

Petitioner never argued that element 4 shows that it is optional whether the merchant makes an image scan of the check, but only that it is optional whether the

merchant sends the image to the TPPP.  Any finding by the Board to the contrary is not supported by substantial evidence and should be reversed.

Despite the fact that Petitioner asked the Board to clarify its finding as to this limitation, the only analysis it provided in its Decision Denying Petitioner's Request for Rehearing was to direct Petitioner back to its befuddled analysis in its Final Written Decision.  Appx036.  As discussed in the previous section, in its Final Written Decision, the Board found that "Figure 2 discloses a back office conversion process for converting a paper check into an ACH transaction by scanning the paper check in the back office, and only the transmission of the scanned check image from the back office to the TPPP is optional."  Appx027. This finding seems to indicate the Board understands that Figure 2 discloses that data sent to the TPPP from the merchant can optionally include the image data.

However, the Board also says the following in its Final Written Decision regarding "the meaning of block 4 in Figure 2 containing the language '(Data (Image Optional)'":

> [W]e credit the testimony of Patent Owner's Declarant, Mr. Saffici, as consistent with our interpretation of Figure 2.  For instance, we are persuaded by Mr. Saffici's testimony "that scanning the images is a required part of Figure 2's prior art Back Office Conversion process and not at all optional."
>
> Appx020 (citing Appx516-17).

It is not clear how Mr. Saffici's testimony that under BOC rules an image of a check is required has any relevance to element 4 of Figure 2 that shows "Data (Image Optional)" being sent to the TPPP.  Accordingly, it is not clear what the Board is finding or why.  However, given the plain teaching of Figure 2, any finding by the Board that Figure 2 does not show that it is optional for the merchant to send the TPPP data without check images is not supported by substantial evidence and should be reversed.

> **3.     The Board Committed Legal Error when it Failed to Apply the Proper Test Under KSR Regarding the Combination of Prior Art Disclosed in the '945 Patent and Randle**

The Board committed legal error in failing to apply the obviousness standard set out by the Supreme Court in *KSR*.  In *KSR*, the Court emphasized that a teaching, suggestion, or motivation to combine references may come from "design incentive and other market forces . . . either in the same field or a different one." *KSR Int'l Co. v. Teleflex Inc.,* 550 U.S. 398, 417 (2007).  The touchstone of obviousness is whether "a person of ordinary skill can implement a predictable variation."  *Id.*  In determining whether an invention that combines known elements is patentable, "a court <u>must</u> ask whether the improvement is more than the predictable use of prior art elements according to their established functions." *Id.* (emphasis added).

Courts have further held that the selection of any order of performing process steps is *prima facie* obvious in the absence of new or unexpected results. *Ex parte Rubin*, 128 U.S.P.Q. 440 (Bd App. 1959); *In re Burhans*, 154 F.2d 690, 692 (C.C.P.A. 1946); *In re Gibson*, 39 F.2d 975, 976 (C.C.P.A. 1930).

The Board held that "the reason for combining Figure 2 and Randle proffered by Petitioner is not supported adequately by a rational underpinning sufficient to outweigh Patent Owner's explanations, because the main rational underpinning is based on Petitioner's mischaracterization of Figure 2." Appx027. As discussed above, the "mischaracterization" of Figure 2 the Board seems to be referring to is Petitioner's contention that: 1) MICR scanning can be performed at the point of sale before image scanning in the back office; and/or 2) the merchant can send check data without image data to the TPPP. The Board erred in failing to find that Figure 2 discloses both of these things for the reasons provided above. Thus, Petitioner did not "mischaracterize" Figure 2. One or both of these "mischaracterizations" is the only analysis the Board provided for its holding that Figure 2 and Randle cannot be combined. *See* Appx001-30; Appx031-38. Accordingly, the Board erred in holding that the combination of Figure 2 and Randle is unsupported and should be reversed.

Properly read, Figure 2 discloses MICR scanning at the point of sale before image scanning in the back office. Appx043 at Fig. 2; *see* Section II. A, and

44

Section II. B. 1, *supra*.  Figure 2 also discloses a merchant sending check data (obtained at the point of sale) without image data (that can be obtained after MICR data collection) to the TPPP.  Appx043 at Fig. 2; *see* Section II. B. 1-2, *supra*.

Randle discloses a non-merchant TPPP scanning checks.  Appx320 ¶ 80; Appx287 at Fig. 1.  Randle also discloses a data file and a separate image plus data file processed separately.  *Id.*  Randle teaches that the invention offers efficiency of check processing by "allowing immediate transfer of transaction data related to the paper check followed by a transmission of an image linked to the data."  Appx320 ¶ 77.

A person of skill would find it obvious to combine Figure 2 with Randle such that the TPPP scans the checks instead of the merchant to alleviate the need for the merchant to scan the checks itself.  The Board appears to agree with this.  Appx024-25.  It would further become obvious to a person of skill in the art that the TPPP could credit ACH-eligible transactions upon receipt of check data (that does not include image data) before receiving the physical checks to image.  Performing these steps would be nothing more than using predictable art elements according to their established function.

In terms of the sequence of steps, i.e., crediting the merchant's account and thereafter receiving/scanning the check, there are finite and well understood possibilities.  Either the TPPP can credit the merchant's account for ACH-eligible transactions <u>before</u> receiving/scanning physical checks from the merchant, or it can

credit the merchant's account for ACH-eligible transactions <u>after</u> receiving/scanning physical checks from the merchant. A person of skill would understand that design and market incentives would make it obvious to credit the merchant account as soon as possible when the check data is received and to scan checks later. Similarly, a person of skill would understand the design and market forces for a merchant to send check data to the TPPP as quickly as possible so that it could be credited for ACH-eligible transactions as quickly as possible, and later having checks imaged in batches for efficiency.

The Board got it right in its Institution Decision when it stated that it was persuaded that "merely reversing the order of two steps is *prima facie* obvious, and that there is no new or unexpected result attained by changing the order between the scanning and crediting steps." Appx163. The Board reasoned that:

> Specifically, Figure 2 suggests in blocks 3 and 4 that scanning and transmitting the scanned image to the TPPP is optional; and in block 10 the image is archived by the TPPP. Thus, based on these teachings, it follows that the check image would be scanned either by the merchant or the TPPP, that both techniques were known, and that it would have been within the abilities of one of ordinary skill to implement the techniques in any order, as two options is the epitome of a finite number of options.

*Id.*

Because the Board failed to apply the framework in *KSR*, the Board should be reversed as a matter of law in holding that the combination of Figure 2 and Randle does not disclose receiving/scanning checks after crediting the merchant's account.

### III.    The Board's Failure to Provide Its Reasoning Constitutes Error Under the Administrative Procedure Act § 706

Proceedings in the Patent Trial and Appeal Board are governed by the Administrative Procedure Act. *In re Sang-Su Lee*, 277 F.3d 1338, 1342 (Fed. Cir. 2002) (citing 5 U.S.C. § 706(2)). "For judicial review to be meaningfully achieved within these strictures, the agency tribunal must present a full and reasoned explanation of its decision. The agency tribunal must set forth its findings and the grounds thereof, as supported by the agency record, and explain its application of the law to the found facts." *Id.*

In *Cutsforth*, this Court vacated the Board's obviousness determination and remanded because the "Board made broad, conclusory statements in its [obviousness] analysis . . . The majority of the Board's Final Written Decision is spent summarizing the parties' arguments and offers only conclusory analysis of its own.  While the decision does specify when it is rejecting a party's argument, the Board does not explain why it accepts the remaining arguments as its own analysis." *Cutsforth, Inc. v. MotivePower, Inc.*, No. 2015-1316, 2016 WL 279984, at *3 (Fed. Cir. Jan. 22, 2016).  The Board's analysis in the present case consists of exactly the same broad conclusory statements and incomplete regurgitation of the parties' arguments without providing its own analysis that explains how it weighed the arguments to reach its conclusion.  Just as this Court

vacated and remanded in *Cutsforth*, for the same reasons, it should vacate and remand here.

The Board violated the APA requirement established in *Lee* and *Cutsforth* by failing to articulate any factual finding as to the knowledge of skill in the art with respect to MICR readers at the point of sale and back office conversion rules. Additionally, the Board failed to present a full and reasoned explanation of its finding that Figure 2 does not show MICR capture at the point of sale, or sending a data file without an image file to the TPPP in light of the evidence presented. The Board declined to remedy any of its shortfalls in its Decision Denying Petitioner's Request for Rehearing. The Board's failure to make its findings and analysis explicit violates the requirements of the APA and requires this Court to vacate its non-obviousness determination and remand to the Board for further findings.

## **CONCLUSION**

The Board committed legal error in failing to take into account the knowledge of one of skill in the art reading Figure 2. The Board also committed legal error in failing to apply the required approach for determining obviousness articulated in *KSR*. These legal errors were compounded by making factual findings that were not supported by substantial evidence in some cases, and in other cases by also failing to articulate its factual findings in contravention of the APA. By ignoring the prior art and the evidence of record of background

48

knowledge in the art, the Board erred in finding the claims of the '945 patent not

obvious.  Petitioner respectfully requests that the Court reverse the Board's

determination of non-obviousness.

Dated:  February 8, 2016                     WINTHROP & WEINSTINE, P.A.

                                             /s/ Devan V. Padmanabhan
                                             Devan V. Padmanabhan, #0240126
                                             Michelle E. Dawson, #0388610
                                             225 South Sixth Street, Suite 3500
                                             Minneapolis, MN 55402
                                             Telephone: (612) 604-6400
                                             Facsimile: (612) 604-6800
                                             dpadmanabhan@winthrop.com
                                             mdawson@winthrop.com

                                             *Attorneys for Petitioner-Appellant*
                                                *U.S. Bancorp*

# **ADDENDUM**

Trials@uspto.gov                                      Paper 42
571-272-7822                                   Entered:  August 5, 2015

UNITED STATES PATENT AND TRADEMARK OFFICE
————————

BEFORE THE PATENT TRIAL AND APPEAL BOARD
————————

U.S. BANCORP,
Petitioner,

v.

SOLUTRAN, INC.,
Patent Owner.
————————

Case CBM2014-00076
Patent 8,311,945 B2
————————

Before MICHAEL W. KIM, BEVERLY M. BUNTING, and
PATRICK M. BOUCHER, *Administrative Patent Judges*.

BUNTING, *Administrative Patent Judge*.


FINAL WRITTEN DECISION
*35 U.S.C. § 328(a) and 37 C.F.R. § 42.73*

CBM2014-00076
Patent 8,311,945 B2

# I.  INTRODUCTION

U.S. Bancorp ("Petitioner") filed a Petition (Paper 1, "Pet.")
requesting a covered business method patent review of claims 1–6 of U.S.
Patent No. 8,311,945 B2 (Ex. 1002, "the '945 patent").  Solutran, Inc.
("Patent Owner") filed a Patent Owner Preliminary Response (Paper 15).
Pursuant to 35 U.S.C. § 324, the Board instituted trial as to claims 1–6 of the
'945 patent on one ground of unpatentability, 35 U.S.C. § 103(a).  Paper 16
("Dec. on Inst.").

After institution of trial, Patent Owner filed a Patent Owner Response
(Papers 21, 22 ("PO Resp.")).  Petitioner filed a Reply (Papers 25, 26 ("Pet.
Reply")).  Oral hearing was held on March 4, 2015.  A transcript of the
hearing is in the record.  Paper 41 ("Tr.").

The Board has jurisdiction under 35 U.S.C. § 6(c).  This is a Final
Written Decision under 35 U.S.C. § 328(a) and 37 C.F.R. § 42.73.

For the reasons that follow, we determine that Petitioner has not
proven, by a preponderance of the evidence, that claims 1–6 are
unpatentable under §103(a).

## A.  Related Proceedings

The parties represent that the '945 patent is the subject of the
following judicial proceeding: *Solutran, Inc. v. U.S. Bancorp*, Case No. 13-
cv-2637, (D. Minn), filed September 25, 2013.  Pet. 74; Paper 5, 2.

## B.  The '945 Patent (Ex. 1002)

The '945 patent, titled "System and Method for Processing Checks
and Check Transactions," issued on November 13, 2012, based on U.S.

CBM2014-00076
Patent 8,311,945 B2

Patent Application No. 11/699,766.  Ex. 1002, at [54], [45], [21].  The '945 patent claims priority to provisional patent application no. 60/763,417, filed January 30, 2006.  *Id.* at [60].

The '945 patent is directed to a system and method for processing paper checks and check transactions, in which check data is captured at a point of sale, and, later, a check image is captured remotely for subsequent matching of the check image with the check data.  Ex. 1002, 1:13–17. Electronic check processing involves the recordation of transaction information (i.e., data) into a digital format, which can be transferred electronically without the need physically to transfer the paper check.  *Id.* at 1:54–61.  Some functions of the paper check cannot be accomplished using a digital file of the transaction data, for example, evidence the transaction was authorized, proof of errors, or that a particular transaction was paid.  *Id.* at 2:9–21.

The Check Clearing for the 21st Century Act created a negotiable instrument referred to as a "substitute check," which is a paper reproduction "generated from a stored digital image of the original check."  *Id.* at 2:25–33.  Rules developed for the Automated Clearing House ("ACH") network established processes for merchants to process payments electronically.  *Id.* at 2:46–53.  For example, a point of purchase ("POP") process requires that the merchant receive explicit authorization from the consumer to debit their account, and then the check along with a receipt is returned to the consumer. *Id.* at 2:54–63.  Figure 1, reproduced below, illustrates the prior art POP methodology.

3

CBM2014-00076
Patent 8,311,945 B2



Figure 1 is a Schematic Representation of a
POP Method for Processing a Check.

As shown in Figure 1, the merchant may, at the point of sale ("POS"),
optionally scan a digital image of the check, after which file 4 with the
captured information is transferred to a third party payment processor
("TPPP") for processing as an Automated Clearing House ("ACH")
payment. *Id.* at 4:50–67.

In another example described as a back office conversion ("BOC")
process, the merchant scans the checks in a back office to capture "an image
of the check and store the image with the [magnetic ink character
recognition ("MICR")] data from the check" before transmitting a data file
to a bank or third party processor. *Id.* at 2:66–3:4. The BOC process is
shown in Figure 2 reproduced below.

4

CBM2014-00076
Patent 8,311,945 B2



Figure 2 is a Schematic Representation of a
BOC Method for Processing a Check.

After scanning the check to generate a digital image file of each check, the merchant retains the scanned image and physical check for a required period of time. *Id*. at 3:5–12. Figure 2 demonstrates how a check data file is transferred to the TPPP in block 4, and the check data file may *optionally* include the digital image file of the check. At block 10, the TPPP determines whether to direct the check data file through either the ACH or non-ACH check processing network, both of which serve to debit a consumer account and credit a merchant account. The TPPP also archives the digital image file and the check data file.

In an embodiment, the '945 patent discloses how processing of the paper check entails transferring the check data independent of the check image, resulting in debiting of a consumer account and crediting of a merchant account prior to scanning and creating the check image (*id*. at 4:30–34) as shown in Figure 3 reproduced below:

5

CBM2014-00076
Patent 8,311,945 B2



FIG. 3 illustrates the method of processing a check between a
consumer and merchant using a third party processor.

Specifically, check data is captured at the merchant's POP, such as by
reading the MICR line of the check and converting the MICR information to
a digital form.  *Id.* at 5:12–20.  The merchant sends the data file, which
contains information regarding the transaction, i.e., MICR information,
amount, merchant identifier, and transaction identifier.  *Id.* at 5:21–36.  After
the TPPP receives the check data, if determined to be eligible for processing
via the ACH network, the check data passes "through the ACH network for
processing and appropriate debiting of the consumer's account **42** and . . .
crediting the merchant's account **44**."  *Id.* at 5:37–42.  Separately and
subsequently, the paper check is transported physically from the merchant to
the TPPP for scanning to create a check image that is stored in a digital
image file.  *Id.* at 3:23–28; 5:47–58.  Finally, the TPPP matches the image
files of the checks to the data files representative of the check to complete
processing and manage discrepancies.  *Id.* at 5:59–67.  In an embodiment,

6

CBM2014-00076
Patent 8,311,945 B2

the merchant's account can be credited at the initiation of the third party processor, based on the data file, before the image of the check is matched to the data file, or perhaps even before the check is imaged for ACH eligible items. ACH ineligible items are rendered processed through the Image Exchange Network upon successful data and image match.

*Id.* at 10:30–36.

## C. Illustrative Claim

Petitioner challenges claims 1–6 of the '945 patent. Of the challenged claims, claims 1, 4, and 5 are independent, and all are directed to a method for processing paper checks. Claim 1 is illustrative of the claims at issue and reads as follows:

1. A method for processing paper checks, comprising:

a) electronically receiving a data file containing data captured at a merchant's point of purchase, said data including an amount of a transaction associated with MICR information for each paper check, and said data file not including images of said checks;

b) after step a), crediting an account for the merchant;

c) after step b), receiving said paper checks and scanning said checks with a digital image scanner thereby creating digital images of said checks and, for each said check, associating said digital image with said check's MICR information; and

d) comparing by a computer said digital images, with said data in the data file to find matches.

CBM2014-00076
Patent 8,311,945 B2

### D. Prior Art

Petitioner relies on the following prior art references (Pet. 6):

| Reference | Patents/Printed Publication | Date | Exhibit |
|---|---|---|---|
| Figure 2 of the '945 patent | Figure 2 of U.S. Patent Number 8,311,945 B2 | January 30, 2006 | 1002 |
| Randle | U.S. Patent Publication No. US 2005/0071283 A1 | March 31, 2005 | 1012 |

### E. Instituted Grounds

Trial was instituted as to claims 1–6 of the '945 patent based on the following statutory ground. Pet. 10.

| Claims Challenged | Basis | References |
|---|---|---|
| 1–6 | § 103(a) | Figure 2 of the '945 patent and Randle |

## II. ANALYSIS

### A. Standing

We determined, in the Decision on Institution, that the '945 patent is a covered business method patent, as defined in § 18(a)(1)(E) of the America Invents Act and 37 C.F.R. § 42.301, because at least one claim of the '945 patent is directed to a covered business method. Dec. on Inst. 5–8. Patent Owner does not challenge Petitioner's standing to file a petition for a covered business method patent review of the '945 patent. *See* PO Resp. Thus, after considering the record again, we reaffirm our determination in the Decision on Institution and conclude that the '945 patent is eligible for a covered business method patent review.

8

CBM2014-00076
Patent 8,311,945 B2

*B.  Level of Ordinary Skill in the Art*

Patent Owner argues that Petitioner presents neither evidence of the level of ordinary skill in the art, nor testimony regarding how a person of ordinary skill in the art ("POSA") would understand the cited references. PO Resp. 23.  Petitioner counters that based on the MPEP and case law, USPTO administrative patent judges can rely on their own scientific competence in this regard.[1]  Reply 2 (citing Pet. 46–47).  In light of the discussion below, the parties' assertions are moot.  We note further that, regardless, we are not persuaded by Patent Owner's contention because the applied prior art reflects the appropriate level or skill at the time of the claimed invention.  *See Okajima v. Bourdeau*, 261 F.3d. 1350, 1355 (Fed. Cir. 2001).

Patent Owner asserts through its Declarant, Mr. Saffici, that a POSA in 2006 would have had ten years of experience in check processing and five years of related ACH processing experience, including "a complete understanding of the rules governing electronic check conversion, including BOC, Check-21, POP, and ARC", and that in addition to the above-referenced experience, the POSA would have "held positions of Operations Management, Senior Business Analyst, and/or Program/Product Management in these respective areas."  Ex. 2009 ¶ 30.  Petitioner largely

---

[1] We note that the Board is not bound necessarily by the M.P.E.P.  *See, e.g.*, *Molins PLC v. Textron, Inc.,* 48 F.3d 1172, 1180 n.10 (Fed. Cir. 1995) ("While the MPEP does not have the force of law, it is entitled to judicial notice as an official interpretation of statutes or regulations as long as it is not in conflict therewith.").

CBM2014-00076
Patent 8,311,945 B2

agrees with Patent Owner's Declarant, except with the assertion that the POSA would have held positions of Operations Management, Senior Business Analyst, and/or Program/Product Management in these respective areas.  Reply 2.

The parties' agreement that a person of ordinary skill in the art would have ten years of experience in electronic check processing and five years of related ACH processing experience is reasonable, and we adopt that description for purposes of this proceeding.  We agree also with Petitioner that it is not necessary for such a person "to have held one of the three specific titles enumerated in PO's definition," as we are unpersuaded that one of ordinary skill would also need experience in management.  *Id.*  Based on the stated qualifications of Mr. Saffici (Ex. 2009 ¶¶ 6–7) and his Curriculum Vitae (*Id.* at Appendix II), Patent Owner's Declarant meets the requirements of this definition.[2]

### C.  Claim Construction

We interpret claims of an unexpired patent using the "broadest reasonable construction in light of the specification of the patent in which [they] appear[]."  37 C.F.R. § 42.300(b); *accord Versata Dev. Grp., Inc. v. SAP Am., Inc.*, No. 2014-1194, 2015 WL 4113722, at *19 (Fed. Cir. July 9, 2015) (endorsing the broadest reasonable construction standard for

---

[2] Patent Owner also proffered the testimony of Mr. Phillip Green (Ex. 2010) regarding commercial success and Petitioner proffered the rebuttal testimony of Mr. Elliott McEntee (Ex. 1021).  Because we do not reach the merits of Patent Owner's arguments regarding commercial success, we do not consider the testimony of either party's declarant in this regard.

CBM2014-00076
Patent 8,311,945 B2

unexpired patents in covered business method patent reviews) (*citing In re Cuozzo Speed Techs. LLC*, No. 14-1301, 2015 WL 4097949, slip op. at *10– *19 (Fed. Cir. July 8, 2015)).  Claim terms are given their ordinary and customary meaning, as would be understood by a person of ordinary skill in the art at the time of the invention and in the context of the entire patent disclosure.  *See In re Translogic Tech., Inc.*, 504 F.3d 1249, 1257 (Fed. Cir. 2007).  We apply this standard to the claims of the '945 patent.  *See* Pet. 11 (proposing to construe the claims of the '945 patent in accordance with their broadest reasonable interpretation).

In determining whether to institute covered business method patent review, we construe claim terms as necessary to apply the references.  Patent Owner proffers a claim construction for "a data file containing data captured at a merchant's point of purchase" and "comparing by a computer said digital images with said data in the data file to find matches," both of which are recited in independent claim 1.  PO Resp. 14–19.  Additionally, Patent Owner proffers a claim construction for "providing exception processing procedures for any unmatched or mismatched digital images and data in the data file," which is recited in claim 2.  *Id.* at 19–21.  Petitioner counters that no express claim construction is necessary, and maintains that Patent Owner's proposed claim constructions do not "change the analysis." Reply 1.

Specifically, Patent Owner proposes that "a data file containing data captured at a merchant's point of purchase" means "an electronic data file containing data that were captured at a merchant's point-of-sale terminal." PO Resp. 14.  Regarding Patent Owner's proposal to construe "data file" as "an electronic data file," Patent Owner asserts that "the data file must be

CBM2014-00076
Patent 8,311,945 B2

electronic to be received electronically." *Id.* at 14. Although we agree with Patent Owner's position, we are unpersuaded such a modification of the claim term is necessary, as it is reflected already in the ordinary and customary meaning of the term.[3]

Further, Patent Owner asserts that the recited "point of purchase" should be construed as a "point-of-sale terminal." Patent Owner asserts that this modification is consistent with the description in the Specification regarding the capture of the data file at the merchant's point-of-sale terminal. *Id.* (citing Ex. 1002, 5:11–19). In particular, because the Specification discloses that the cashier keys in the amount of the purchase at the point-of-sale and passes the check through a MICR reader, Patent Owner asserts that "'point of purchase' is a point-of-sale terminal." *Id.* at 15 (citing Ex. 2009 ¶¶ 24, 25).

We are persuaded by Patent Owner's assertion that the claim term "point of purchase" should be modified explicitly to refer to a "point-of-sale terminal." Figure 4 describes in block 109 how transaction data are captured at a point of sale: "MICR is scanned and associated with amount" (Ex. 1002, Fig. 4). The '945 patent itself refers to the "point-of-sale terminal" in connection with data captured from the check presented to the merchant during the sales transaction, including "MICR line (routing number, account number, check number), dollar amount, store identifier, lane/cashier identifier, point-of-sale date, and other merchant defined auxiliary information." *Id.* at 3:52–58; *see id.* at 5:12–20; 6:26–39.

---

[3] Only those terms that are in controversy need be construed, and only to the extent necessary to resolve the controversy. *Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999).

CBM2014-00076
Patent 8,311,945 B2

Mr. Saffici opines that "[a] person of ordinary skill in the art would understand Claim 1 Step a) to identify the situation where electronic data comprised of a dollar amount and only the MICR information from a check is captured at a merchant's point of purchase (POS terminal) and is received by a TPPP, without a check image." Ex. 2009 ¶ 45. Moreover, during oral argument the parties agreed that keying of the amount and reading of MICR information occurs at the point of sale device. Tr. 20:1–9; 55:4–8.

Therefore, based on the current record, we conclude that the broadest reasonable construction of the claim phrase "a data file containing data captured at a merchant's point of purchase" is "a data file containing data captured at a merchant's point-of-sale terminal."

Additionally, we find that the language of claim 1 both logically and grammatically requires that the step of "receiving said paper checks and scanning said checks" be performed *after* the step of "crediting an account for the merchant." In addition to labeling the steps sequentially, claim 1 includes explicit language that limits the order in which the recited steps are performed, and Figure 3 of the '945 patent illustrates such steps performed in that order. This interpretation is further supported by the Specification of the '945 patent, which likewise requires that the steps of "receiving said paper checks and scanning said checks" be performed after the step of "crediting an account for the merchant."

For the foregoing reasons, we construe method claims 1, 4, and 5 as requiring that the steps be performed in the sequential order recited.

13

CBM2014-00076
Patent 8,311,945 B2

As to all other claim terms, we give these claim terms their broadest reasonable construction in light of the specification. *See* 37 C.F.R. § 42.300(b).

### D. *Obviousness Based on Figure 2 of the '945 Patent and Randle*

Petitioner challenges claims 1–6 of the '945 patent as unpatentable under 35 U.S.C. § 103 over Figure 2 of the '945 patent and Randle. The evidentiary standard in this case is a preponderance of the evidence. *See* 35 U.S.C. § 326(e); 37 C.F.R. § 42.1(d). For the reasons given below, after consideration of the Petition, the arguments in the Patent Owner Response, other substantive papers, and the evidence of record, we conclude that Petitioner has not demonstrated, by a preponderance of the evidence, that each of claims 1–6 of the '945 patent is unpatentable based on Figure 2 of the '945 patent and Randle.

### 1. *Principles of Law*

A claim is unpatentable under § 103(a) if the differences between the claimed subject matter and the prior art are such that the subject matter, as a whole, would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 406 (2007). The question of obviousness is resolved on the basis of underlying factual determinations, including: (1) the scope and content of the prior art; (2) any differences between the claimed subject matter and the prior art; (3) the level of skill in the art; and (4) where in evidence, so-called secondary considerations. *Graham v. John Deere Co.*, 383 U.S. 1, 17–18 (1966).

An invention "composed of several elements is not proved obvious

14

CBM2014-00076
Patent 8,311,945 B2

merely by demonstrating that each of its elements was, independently, known in the prior art." *KSR*, 550 U.S. at 418. Moreover, a ground of obviousness must include "articulated reasoning with some rational underpinning to support the legal conclusion of obviousness." *In re Kahn*, 441 F.3d 977, 988 (Fed. Cir. 2006). "[T]his analysis should be made explicit" and it "can be important to identify a reason that would have prompted a person of ordinary skill in the relevant field to combine the elements in the way the claimed new invention does." *KSR*, 550 U.S. at 418.

We analyze the instituted ground of unpatentability in accordance with those principles.

### 2. *Overview of Figure 2 (Ex. 1002)*

As discussed above, Figure 2 of the '945 patent ("Figure 2") describes the BOC check processing method whereby "the merchant scans their checks in batches a back office, instead of at the purchase terminal." Ex. 1002, 5:1–4; *see id.* at 3:1–4.

### 3. *Overview of Randle (Ex. 1012)*

Randle is directed to electronic transaction processing, including "secure, accurate and verified imaging of financial instruments, check truncation and electronic funds payment, settlement and clearing." Ex. 1012 ¶ 2. Specifically, the system of Randle

> allows for secure check truncation at the point of presentment or any other step in the item processing chain by creating a file containing an image of the check and a file containing transaction data related to the paper check, each of which can be transmitted together or separately in a network and subsequently uniquely matched and or integrated for check processing.

15

CBM2014-00076
Patent 8,311,945 B2

*Id.* ¶ 76.  According to Randle, the deposit bank captures a check and related information by scanning to create an image of the check, which is in addition to creating a data file containing MICR data of the check.  *Id.* ¶ 80.  Specifically, "separate data file **10** and image plus data file **11** are separately manipulated and processed for settlement, payment and clearing."  *Id.*  Noting that smaller size data files may be transferred more quickly than larger image files, Randle discloses that

> the clearing house has a capability to timely notify financial institution participants of debit and credit obligations that will accrue upon actual receipt and processing of the imaged instruments upon conclusion of a periodic, or other, settlement . . . [a]fter clearing, the checks (in image/IRD form) are returned to payor banks **22** where they are separately processed and associated with individual payor's accounts, and returned, as data and/or a complete or partial image, to the payor in or accompanying an account statement **25**.  The payee bank **21**, receiving funds, will assign the funds and credit the respective individual payee **3**.

*Id.*

### 4. *Discussion*

In support of this asserted ground of unpatentability, Petitioner provides arguments identifying where every limitation of claims 1–6 may be found in Figure 2 and Randle.  Pet. 48–71.  We address below certain claim elements, as disputed by the parties, to be disclosed by Figure 2 and Randle.

For instance, Petitioner contends that Figure 2 discloses the limitations of step a), step b), and portions of step c) of claim 1, and indicates where these limitations may be found in Figure 2.  Pet. 48–51.  Specifically, Petitioner argues that Figure 2 of the '945 patent "makes clear that providing an image with the file is 'optional,'" and interprets the "optional" language to mean that the data file being sent to the TPPP "does

16

not have to contain an image." *Id.* at 50. Based on this interpretation, Petitioner asserts that the data file captured at the point of purchase and transmitted without the image of the check satisfies step a) of "electronically receiving a data file containing data captured at a merchant's point of purchase, said data including an amount of a transaction associated with MICR information for each paper check, and said data file not including images of said checks" recited in claim 1. *Id.*

With regards to Randle, Petitioner contends that Randle discloses portions of step c) and step d), and sets forth where these limitations are disclosed in Randle. *Id.* at 51–52. Acknowledging that neither Figure 2 nor Randle expressly discloses performing step c), after step b), i.e., crediting the merchant account before scanning an image of the check, Petitioner argues "this sequencing would be obvious to one of skill based on Figure 2 in view of Randle." Pet. 52.

Patent Owner responds that claims 1–6 of the '945 patent are not obvious because the Petition mischaracterizes Figure 2 and "Randle does not teach what Petitioner says it does." PO Resp. 22. To support its arguments, Patent Owner relies on testimony of its declarant, Mr. Saffici. Ex. 2009. Specifically, Patent Owner argues that the Petition mischaracterizes Figure 2, in part because Figure 2 does not show that it is optional for the merchant to scan the image. PO Resp. 25–35. Explaining further, Patent Owner asserts that both Figures 1 and 2 of the '945 patent are labeled as "prior art," and that Figure 1 illustrates the "prior-art method for converting a check to an electronic transaction using NACHA's POP ('point of purchase') operating rules." *Id.* (citing Ex. 2009 ¶ 11). Patent Owner contends that "under POP rules, the merchant passes the check through a

17

CBM2014-00076
Patent 8,311,945 B2

MICR reader in order to capture information about the check and then hands the check back to consumer." *Id.* (citing Ex. 1002, 2:58–60, 4:55–58). While the POP rules do not require the merchant to obtain and keep an image of the check, Patent Owner argues that the merchant optionally may retain an image of the check as shown in Figure 1. *Id.* (citing Ex. 1002, 2:61–63, 4:58–59, Figure 2).

Distinguishing Figure 2 from Figure 1, Patent Owner asserts that Figure 2 depicts "a method for converting a check to an electronic transaction using NACHA's BOC operating rules," whereby the merchant "uses scanners to 'capture an image of the check and store the image with the MICR data from the check'" for two years. *Id.* at 26–27 (citing Ex. 1002, 2:65–3:2, 3:3–12). Thus, Patent Owner maintains that "Figure 2 shows that the merchant must key in the amount of the transaction, read the MICR data from the check, and create a scanned image of the check" as required under the BOC rules. *Id.* at 27–28. In further support of this position, Patent Owner directs our attention to the arrow leading from merchant block 3 to a trash can for receiving the paper checks, and states that this image signifies that the paper checks can be thrown away by the merchant after the amount is keyed in, MICR data read, and digital image created. *Id.* at 28. Patent Owner relies on this comparison with Figure 1 to supports its position that the BOC model described in Figure 2 portrays how the third-party payment processor archives the data files and image files received from the merchant, after which "a file containing this information is then transferred to a bank or a third-party payment processor." *Id.* at 29 (citing Ex. 1002, 3:1–4).

18

CBM2014-00076
Patent 8,311,945 B2

Furthermore, Patent Owner asserts that the '945 patent confirms its interpretation of Figure 2 by describing that Figure 2 discloses "Back Office Conversion and the New NACHA Rules" (*id.* at 30) and how "the scanners capture an image of the check and store the image with the MICR data from the check" (*id.* at 31 (citing Ex. 1002, 3:1–2)).  Additionally, Patent Owner points to the passage in the '945 patent stating that the new rules "require that a digital image of the front of the check be retained for two years" (*id.* (citing Ex. 1002, 3:7–8)).  Patent Owner also relies on the following passage from the '945 patent describing Figure 2:

> FIG. **2** shows a prior art system for converting a check in the merchant's back office.   With this system, ***the merchant scans their checks in batches*** in a back office, instead of at the purchase terminal.

*Id.* (citing Ex. 1002, 5:1–4).  Based on this teaching regarding the creation of both the data file and scanned image by the merchant, Patent Owner argues that the term "optional" in Figure 2 means that the merchant may elect to transmit only the data file (allowing the TPPP to initiate ACH processing of the check and archival of check data) or both the data file and image file (allowing the TPPP to handle ACH and non-ACH transactions, archive check data and check image data).  *Id.* at 32.  Thus, Patent Owner concludes that Figure 2 requires that the merchant scans the check before the merchant can request payment through the ACH system.  *Id.*

Petitioner counters that "PO incorrectly argues that none of the prior art teaches two separate collections of data occurring at two different times." Reply 2.  To demonstrate that Figure 2 and the BOC regulations describe separating MICR scanning from image scanning, Petitioner cites the testimony of Patent Owner's expert, Mr. Saffici, that "a person of ordinary

19

skill would understand that: 1) the BOC rules do not require a check image capture to occur at the same time as MICR capture (Ex. 1020 at 48:12-18), and 2) the BOC rules contemplate that the MICR information can be collected separately at the point of sale ('POS'), followed later in time by a check image scan (Id. at 54:22-57:19)." Reply 2–3. Also, Petitioner cites the BOC requirements for MICR Capture for support, which state that the MICR information is obtained during initial processing. Thus, Petitioner argues that "[t]he regulations do not say the MICR information is obtained from an image scanner, but rather a 'reader,' meaning a MICR reader," and that the rules do not require that image capture occur in the merchant's back office. *Id.* at 3. Petitioner reasons that because the BOC rules address check imaging separately from MICR capture, the inference is that these "two different data capture events may occur at two different times." *Id.*

As part of our analysis, we first consider the parties' arguments concerning the scope and content of Figure 2. An understanding of Figure 1 of the '945 patent, also labeled as prior art, is instructive. To the extent Patent Owner argues that Figure 1 discloses the process for converting a check to an electronic transaction at the point of purchase, and Figure 2 discloses the process for converting the check to an electronic transaction in the merchant's back office, including scanning the check to comply with NACHA's BOC operating rules, we agree. As to the meaning of block 4 in Figure 2 containing the language "Data (Image Optional)," we credit the testimony of Patent Owner's Declarant, Mr. Saffici, as consistent with our interpretation of Figure 2. For instance, we are persuaded by Mr. Saffici's testimony "that scanning the images is a required part of Figure 2's prior art Back Office Conversion process and not at all optional." Ex. 2009 ¶ 34.

CBM2014-00076
Patent 8,311,945 B2

Likewise, we are persuaded by Mr. Saffici's testimony that "Figure 2 cannot be read to suggest that the TPPP scans paper checks or is involved at all with scanning paper checks." *Id.*

Petitioner's arguments, concerning the separate acquisition and data paths of MICR data and check image data, do not persuade us that Figure 2 discloses that the checks are scanned by the TPPP and not in the back office of the merchant. Petitioner does not direct us to any relevant passage in the Specification or other evidence to support this contention. To the contrary, block 3 in Figure 2 is labeled "Merchant Back Office Conversion" and block 3 is further subdivided into three blocks labeled "key amount," "Read MICR," and "Scanned Image." *See, e.g.*, Ex. 1002, Fig. 2.

We also are not persuaded by Petitioner's characterization of Figure 2, because both parties agree that ACH processing can occur without the check image and that a check image is required by BOC regulations. Reply 4 (citing PO Resp. 28, 32). Petitioner's arguments directed to the BOC rules do not establish sufficiently that Figure 2 shows that the TPPP scans the image file of the check. More persuasive is Patent Owner's argument and evidence demonstrating that the paper check is scanned during the back office conversion in Figure 2, while transmission of the scanned image of the check to the TPPP is optional.

Having determined the scope and content of Figure 2, we now consider Patent Owner's specific argument that the prior art does not teach step a). PO Resp. 40–41. Claim 1 recites:

> a) electronically receiving a data file containing data captured
> at a merchant's point of purchase, said data including an
> amount of a transaction associated with MICR information for

CBM2014-00076
Patent 8,311,945 B2

> *each paper check, and said data file not including images of*
> *said checks.*

Patent Owner argues "the Petition cites nothing in the figure itself or in the specification suggesting that the data are captured at the merchant's point of purchase in Figure 2." PO Resp. 40 (citing Pet. 49–50). Patent Owner contends that Figure 2 "makes clear that the data are not captured at the point of purchase," rather in the back office of the merchant. *Id.* at 40–41. In support of this contention, Patent Owner relies on the opinion of Mr. Saffici, that "a person of ordinary skill in the art would understand Figure 2 to call for capturing the data in the back office, not at the point of purchase." *Id.* at 41 (citing Ex. 2009 ¶ 33(a)).

After reviewing all substantive papers and evidence of record, we agree with Patent Owner that the Petition does not explain sufficiently how Figure 2 of the '945 patent satisfies step a). For instance, step a) requires that "the data be captured at the merchant's point of purchase." Petitioner, in its Reply, does not refute directly Patent Owner's contention that Figure 2 discloses that the data is captured in the back office, and not at the merchant's point-of-sale terminal. *See* Reply 2–4. To the extent Petitioner argues that Figure 2 explicitly discloses the separate acquisition of MICR data and check image data, because "[e]lement 3 does not have a single box for imaging the document from which MICR data is obtained, but rather has separate boxes for reading the MICR data and imaging the check," we are not persuaded for the reasons discussed above. *Id.* at 4. Nor are we persuaded by Petitioner's argument that "[e]lement 4 further supports that Figure 2 discloses two separate data paths by showing that the [MICR] data

22

CBM2014-00076
Patent 8,311,945 B2

without the [check] image can be sent to the TPPP for processing" for the reasons discussed above. *Id.*

Thus, we are not persuaded by Petitioner that the "back office conversion" referred to in Figure 2 discloses "data capture at the merchant's point of sale terminal," as recited in step a). We credit the testimony of Mr. Saffici that "[t]he '945 Patent says that in the traditional BOC process 'merchants scan their checks in a back office' not at the point of purchase" as consistent with our understanding of this claim term. Ex. 2009 ¶ 33(a) (citing Ex. 1002, 2:67) (internal citations omitted).

We agree with Patent Owner that one of ordinary skill in the art would have understood Figure 2 as showing that the data is captured in the back office and not at the point-of-sale terminal, as we have interpreted this claim term. As such, Petitioner does not establish sufficiently that Figure 2 discloses the step a) claim element of "data captured at the merchant's point of sale terminal."

Claim 1 further recites the step of:

> c) after step b), receiving said paper checks and scanning said checks with a digital image scanner thereby creating digital images of said checks and, for each said check, associating said digital image with said check's MICR information.

Acknowledging that neither Figure 2 nor Randle show the claim element "after step b," Petitioner argues that these references disclose the remaining elements of this claim step. Pet. 51. In particular, Petitioner contends "Figure 2 shows that, optionally a digital image of a check can be scanned." *Id.* (citing Ex. 1002, Fig. 2). With respect to Figure 2, Patent Owner takes the position that the Petition's "misinterpretation causes the Petition's analysis to be fundamentally flawed, as Figure 2 provides the opposite

23

CBM2014-00076
Patent 8,311,945 B2

teaching." PO Resp. 43. Having determined for the reasons above that Figure 2 does not disclose that the TPPP scans the checks, we are persuaded by Patent Owner's contention that Figure 2 does not disclose the scanning portion of this limitation. Thus, Petitioner does not establish sufficiently that Figure 2 discloses the step c) claim element of receiving said paper checks and scanning said checks with a digital image scanner.

Nonetheless, Petitioner also argues that the following passage from Randle satisfies this limitation:

> the deposit bank 4 captures the check and related information, such as by a scan 5 to create an image of the front and back of the check and collects information such as the payee name, bank, payee's account number, the amount of the check and the MICR data.

Pet. 51 (citing Ex. 1012 ¶ 80). Taking a contrary position, Patent Owner argues that Randle teaches a system whereby "a bank can scan a check, thereby creating both an image file and a data file." PO Resp. 49. In particular, Patent Owner asserts that Randle discloses "the Check 21 system in which a bank receives a deposited check and then converts the check to a digital image for settlement processing." *Id.* at 50. Relying on the testimony of Mr. Saffici, Patent Owner contends that "nothing in Randle teaches that a merchant outsources its check-scanning functions to a bank." *Id.* at 51 (citing Ex. 2009 ¶ 38).

Petitioner's arguments, at least in this regard, are persuasive. Randle discloses "creating a file containing an image of the check and a file containing transaction data related to the paper check, each of which can be transmitted together or separate1y in a network and subsequently uniquely matched and or integrated for check processing." Ex. 1012 ¶ 76. The claim

CBM2014-00076
Patent 8,311,945 B2

phrase "receiving said paper checks and scanning said checks with a digital image scanner thereby creating digital images of said checks and, for each said check, associating said digital image with said check's MICR information," by itself, does not preclude the bank from reading the MICR information.

Nonetheless, we cannot ignore the first portion of step c), "after step b)," which Petitioner admits is missing from both Figure 2 and Randle. Petitioner presents arguments directed to why "this sequencing would be obvious to one of skill based on Figure 2 in view of Randle." Pet. 52. In particular, Petitioner argues that performing the scanning step c) after step b) would be obvious to one of skill based on Figure 2 in view of Randle, because changing the order of steps from the prior art methods is *prima facie* obviousness. *Id.* (*citing Ex parte Rubin*, 128 USPQ 440 (BPAI 1959); *In re Burhan's*, 154 F.2d 690 (CCPA 1946); *In re Gibson*, 39 F.2d 975 (CCPA 1930)). Specifically, Petitioner argues claim 1 is obvious because it merely reverses the sequence in which the steps of "[m]aking a digital image of a paper check and associating it with [ ] data regarding the check", i.e., step c), and "[c]rediting the merchant's account," i.e., step b), are performed. *Id.* at 57. According to Petitioner, Figure 2 discloses that the merchant's account can be credited without imaging the check at all, though imaging the check is optional, and Randle discloses that the check can be imaged before the merchant's account is credited. *Id.* at 58–59. Thus, Petitioner reasons that the sequence associated with the steps of crediting the merchant's account and imaging the check, is based on "finite and well understood possibilities." *Id.* Changing the order of steps would not provide new or unexpected results, according to Petitioner, because one of skill in the art, as evidenced

25

CBM2014-00076
Patent 8,311,945 B2

by Figure 2, "would have readily recognized that a data file without the image may be sent for ACH processing," and Randle discusses the time-saving advantage of not having the merchant scan the check and associate the resulting image with the data file. *Id*. at 59.

Patent Owner disagrees, arguing that Figure 2 shows "that the MICR data scan and image scan occurs together before crediting the merchant's account, and Randle shows that a bank creates a scanned image of a check before crediting the merchant's account." PO Resp. 50. Based on the teachings in both references requiring check scanning before crediting an account, Patent Owner contends it would not be obvious to combine these references "and conclude that check scanning should happen <u>after</u> crediting an account," as required by claim 1. *Id.* Petitioner's argument regarding combining Figure 2 and Randle also fails, according to Patent Owner, because the BOC process shown in Figure 2 "<u>requires</u> the creation of a scanned image of a check before crediting the merchant's account." *Id.* Patent Owner asserts that the addition of Figure 2 to Randle confirms that the check image must be created before settlement, because Randle performs settlement processing on the check image. *Id.* at 52. Furthermore, Patent Owner asserts that it would not be *prima facie* obvious to change the order of steps because "[n]either cited prior-art reference shows a system where a data file is first generated from the paper check and a digital image file is later generated from the same paper check." *Id.* at 53. Patent Owner notes that claim 1, in addition to requiring that reading the MICR data and scanning the image of the check occur at different times, also requires that the merchant's account be credited between these two scans. *Id.* In reply, Petitioner counters that "[a] person of ordinary skill who PO agrees

CBM2014-00076
Patent 8,311,945 B2

understands existing electronic check conversion rules would be able to apply well-known processing steps and design choices made under these rules (i.e Check-21, POP, ARC) to solve problems related to implementing the BOC rules." Reply. 9.

We agree with Patent Owner's contention that Figure 2 discloses a back office conversion process for converting a paper check into an ACH transaction by scanning the paper check in the back office, and only the transmission of the scanned check image from the back office to the TPPP is optional. At the same time, Petitioner acknowledges that neither Figure 2 nor Randle discloses that step c) is performed after step b). Having interpreted the language of the claims as requiring that the steps occur in the specified sequence, Petitioner has failed to show that it would have been obvious to perform step c) of check scanning after step b) of crediting an account.

We also agree with Patent Owner that Petitioner provides only attorney argument, and does not proffer persuasive evidence to support its position that it would have been obvious for one of skill in the art to perform the step of check scanning after the step of crediting the account. Although we acknowledge that the general principle pertaining to "changing the order of steps" has some basis in case law, we determine that Patent Owner has provided sufficient explanation to outweigh that general principle. Therefore, we conclude that the reason for combining Figure 2 and Randle proffered by Petitioner is not supported adequately by a rational underpinning sufficient to outweigh Patent Owner's explanations, because the main rational underpinning is based on Petitioner's mischaracterization of Figure 2. *See KSR*, 550 U.S. at 418.

27

CBM2014-00076
Patent 8,311,945 B2

We conclude that Petitioner has not established by a preponderance of the evidence that claim 1 would have been obvious over Figure 2 and Randle.

5. *Claims 2–6*

Dependent claims 2, 3, and 6 each depend from claim 1 and include additional limitations. Likewise, independent claims 4 and 5 are similar to claim 1, and include additional limitations. In the Petition, Petitioner relied on the cited portions of Figure 2 and Randle as satisfying the claim limitations of claims 2–6. Pet. 48–71. Petitioner argued that claims 2–6 are obvious for the reasons provided with respect to claim 1. *Id*. In opposition, Patent Owner presented arguments and evidence in support of its position that claims 2–6 are not obvious. PO Resp. 58–63. For the reasons provided *supra* with respect to claim 1, we are persuaded similarly by Patent Owner's contentions and supporting evidence concerning claims 2–6. Accordingly, we conclude that Petitioner has not established by a preponderance of the evidence that claims 2–6 of the '945 patent are unpatentable as obvious over the combination of Figure 2 of the '945 patent and Randle.

IV. CONCLUSION

For the foregoing reasons, Petitioner has not demonstrated by a preponderance of the evidence that claims 1–6 of the '945 patent are unpatentable based on 35 U.S.C. § 103(a).

28

CBM2014-00076
Patent 8,311,945 B2

## V.  ORDER

For the foregoing reasons, it is

ORDERED that claims 1–6 of the '945 patent are not held unpatentable; and

FURTHER ORDERED that, because this is a Final Written Decision, the parties to the proceeding seeking judicial review of the decision must comply with the notice and service requirements of 37 C.F.R. § 90.2.

CBM2014-00076
Patent 8,311,945 B2

PETITIONER:

Michelle Dawson
Devan V. Padmanabhan
Paul J. Robbennolt
WINTHROP & WEINSTINE, P.A.
mdawson@winthrop.com
dpadmanabhan@winthrop.com
probbennolt@winthrop.com
patent@winthrop.com


PATENT OWNER:

Daniel A. Tysver
BECK AND TYSVER, P.L.L.C.
dtysver@bitlaw.com

Robert J. Gilbertson
Sybil Dunlop
GREENE ESPEL, PLLP
BGilbertson@greeneespel.com
SDunlop@greeneespel.com

Trials@uspto.gov                                        Paper 45
571-272-7822                                Entered: November 6, 2015

UNITED STATES PATENT AND TRADEMARK OFFICE

_____

BEFORE THE PATENT TRIAL AND APPEAL BOARD

_____

U.S. BANCORP,
Petitioner,

v.

SOLUTRAN, INC.,
Patent Owner.

_____

Case CBM2014-00076
Patent 8,311,945 B2

_____

Before MICHAEL W. KIM, BEVERLY M. BUNTING, and
PATRICK M. BOUCHER, *Administrative Patent Judges*.

BUNTING, *Administrative Patent Judge*.

DECISION
Denying Petitioner's Request for Rehearing
*37 C.F.R. § 42.71(d)*

CBM2014-00076
Patent 8,311,945 B2

# I. INTRODUCTION

On August 5, 2015, we entered a Final Written Decision in which we concluded that Petitioner had not demonstrated, by a preponderance of the evidence, that claims 1–6 of U.S. Patent No. 7,404,660 are unpatentable under §103(a).  Paper 42 ("Dec.").  U.S. Bancorp ("Petitioner") filed a request for rehearing of that decision.  (Paper 43, "Req. Reh'g.").

For the reasons that follow, Petitioner's request for rehearing is denied.

# II. THE REQUEST FOR REHEARING

In pertinent part, 37 C.F.R. § 42.71(d) states:

> The burden of showing a decision should be modified lies with the party challenging the decision. The request must specifically identify all matters the party believes the Board misapprehended or overlooked, and the place where each matter was previously addressed in a motion, an opposition, or a reply.

Thus, a request for rehearing is not an opportunity merely to disagree with the Board's assessment of the arguments or weighing of the evidence, or to present new arguments or evidence.  Petitioner seeks reconsideration based on the following contentions:

> (1) that Figure 2 of the '945 patent does not disclose capturing MICR information and check amount at the point-of-sale; and (2) that it would not be obvious to a person of ordinary skill in the art to credit a merchant account before receiving/scanning checks.

Req. Reh'g. 1.  We have reviewed Petitioner's request for rehearing and carefully considered all the arguments presented.  We are not persuaded that

2

Appx032

the Board misapprehended or overlooked arguments or evidence with respect to the contentions asserted by Petitioner.

## III.  DISCUSSION

### A. *That the Board Misapprehended or Overlooked Figure 2*

With regard to its first contention, Petitioner argues that we misapprehended or overlooked the disclosure in Figure 2 of the '945 patent regarding "data captured at the merchant's point-of-sale terminal."  Req. Reh'g. 1–10.  Specifically, Petitioner argues "[i]n finding that Figure 2 does not disclose data (MICR/amount) collection at the point-of-sale, the Board overlooks or misapprehends the context in which Figure 2 must be read by a person of ordinary skill in the art, the teaching of the '945 patent, and the expert testimony."  *Id.* at 5.  Petitioner contends that we erroneously relied on the "brief and incomplete" written description discussing Figure 2 and on the conclusory testimony of Patent Owner's declarant, Mr. Saffici, that "all elements of Box 3 must occur in the merchant's back office."  *Id.*

Petitioner's contentions challenging our reliance on the written description of Figure 2 do not persuade us that we misapprehended or overlooked the context in which Figure 2 is presented in the '945 patent. Because Petitioner disputed the patentability of the '945 patent based on Figure 2, Petitioner bore the burden of establishing by a preponderance of the evidence that Figure 2 describes the relied-upon claim elements, regardless of the breadth or completeness of the written description surrounding Figure 2.  As noted in our Final Written Decision, the following passage from the '945 patent describes Figure 2:

3

CBM2014-00076
Patent 8,311,945 B2

> FIG. 2 shows a prior art system for converting a check in the
> merchant's back office.  With this system, the merchant scans
> their checks in batches in a back office, instead of at the
> purchase terminal.

Dec. 19 (citing Ex. 1002, 5:1–4).  Albeit short, this passage clearly

conveys that with respect to the disclosure in Figure 2, the merchant

scans the checks in the back office and not at the purchase terminal.

Petitioner's further contention that we misapprehended the testimony

of Patent Owner's expert witness, Mr. Saffici, "by giving it too much

weight" (Reg. Reh'g. 7) likewise does not persuade us that we

misapprehended or overlooked the context of Figure 2 of the '945 patent.

According to Petitioner, there is no evidence in the record to support Mr.

Saffici's opinion that "Figure 2 shows that all check data must be collected

in a merchant's back office." *Id.* at 8.  Petitioner repeats its argument that

"the written description does not exclude the possibility of reading the

MICR information and keying in the check amount at the point-of-sale,

while scanning the check to obtain an image in the back office at a later

time." *Id.*

As our Final Decision makes clear, we did not rely solely on any

single piece of evidence with respect to the disclosure of Figure 2.  Dec. 22.

Indeed, we considered Petitioner's arguments concerning the possibility of

using an MICR reader at the point of sale to obtain the MICR information

(*Id.* at 22), but were "not persuaded by Petitioner that the 'back office

conversion' referred to in Figure 2 discloses 'data capture at the merchant's

point of sale terminal,' as recited in step a)." *Id.* at 23.  In other words,

Petitioner's arguments regarding the teaching of Figure 2 were unpersuasive

because they attempt to infer something beyond the unequivocal description

4

of Figure 2 as a system for converting a check in the merchant's back office.
We determined that this attempt was unsuccessful. Moreover, other than
attorney argument, Petitioner did not proffer evidence to refute the testimony
of Mr. Saffici regarding his interpretation of the written description of
Figure 2. Req. Reh'g. 8 (citing Ex. 2009 ¶ 46).

Thus, our consideration of the arguments and evidence presented by
each party "concerning the scope and content of Figure 2" included
Petitioner's arguments and evidence directed to the separate acquisition of
MICR data and check image data. Dec. 21–22. As such, we did not
misapprehend or overlook Petitioner's arguments and evidence; instead, we
considered the arguments and evidence presented by each party as a whole
in determining whether Petitioner had met its burden of persuasion, and
determined that Petitioner had not met that burden. Mere disagreement with
our conclusion is not a proper basis for rehearing.

> B. *The Board Misapprehended or Overlooked that it Would Be
> Obvious in View of Figure 2 and Randle to Credit a
> Merchant Account Before Receiving and Scanning a
> Physical Check*

As to its second contention, Petitioner argues that it never
mischaracterized Figure 2, and that we misapprehended the following
argument of Petitioner:

> that because, as Figure 2 shows, an image is not required to be
> sent to the TPPP to process an ACH transaction, it is within the
> disclosure of Figure 2 that check data (MICR and amount)
> could be collected at the point-of-sale using existing MICR
> reader technology and transmitted to the TPPP, and at a later
> point the checks could be imaged in the merchant's back office
> or elsewhere.

Req. Reh'g. 11.  For the reasons discussed above, we disagree with
Petitioner's assessment of Figure 2.

Next, Petitioner argues that we misapprehended or overlooked
arguments or evidence of record in concluding:

> that the reason for combining Figure 2 and Randle proffered by
> Petitioner is not supported adequately by a rational[]
> underpinning sufficient to outweigh Patent Owner's
> explanations, because the main rational underpinning is based
> on Petitioner's mischaracterization of Figure **2**.

*Id.* at 12 (citing Dec. 27).  Specifically, Petitioner contends that we "did not
clearly explain what particular 'mischaracterization' of Figure 2 Petitioner
provided that resulted in the Board finding no support for crediting before
receiving/scanning."  *Id.*  Petitioner is directed to our detailed discussion in
the Final Written Decision concerning its argument that "Figure 2 of the
'945 patent 'makes clear that providing an image with the file is 'optional,'
and interprets the 'optional' language to mean that the data file being sent to
the TPPP 'does not have to contain an image'"  (Dec. 16–17 (citing Pet. 50)
19–20); Patent Owner's counter arguments (*Id.* at 17–19); as well as our
analysis (*Id.* at 20–27).  From our review of Figure 2, as well as our
consideration of both Petitioner's and Patent Owner's arguments and
supporting evidence, we were not persuaded by Petitioner's position.  Thus,
Petitioner fails to demonstrate that we misapprehended Figure 2 or
overlooked any arguments related to Figure 2.  *Id.* at 13.

Along this vein, we also are not persuaded by Petitioner's further
contention that "[b]ecause the Board misapprehended Figure 2 and the
parties' arguments related to Figure 2, the Board failed to appreciate that
crediting a merchant account before receiving/scanning the check is no more
than an obvious reversal of steps that lead to expected and predictable

CBM2014-00076
Patent 8,311,945 B2

results." Req. Reh'g. 15.  For the reasons discussed *supra*, we are not persuaded by Petitioner that we misapprehended Figure 2.  Likewise, Petitioner's contention that "[c]laim 1 is obvious because it merely reverses the order in which certain steps were performed in the prior art" is unpersuasive because it is unsupported attorney argument.  *See In re Pearson*, 494 F.2d 1399, 1405 (CCPA 1974) (unsupported attorney argument in a brief cannot take the place of evidence).  Based on the evidence of record, we determined that Petitioner did not establish by a preponderance of evidence that it would have been obvious to change the order of steps from the prior art methods of Figure 2 and Randle.

Thus, we did not misapprehend or overlook Petitioner's arguments and evidence; instead, Petitioner's arguments and evidence were considered and rejected on the merits.  As noted above, mere disagreement with our conclusion is not a proper basis for rehearing.

## IV.  CONCLUSION

We have reviewed and considered the arguments in Petitioner's request for rehearing and conclude that Petitioner has not carried its burden of demonstrating that the Board misapprehended or overlooked any matters in rendering the Final Decision.  37 C.F.R. § 42.71(d).  The request for rehearing is *denied*.

7

CBM2014-00076
Patent 8,311,945 B2


PETITIONER:

Michelle Dawson
Devan V. Padmanabhan
Paul J. Robbennolt
Winthrop & Weinstine, P.A.
225 South 6th Street, Suite 3500
Minneapolis, MN 55442
patent@winthrop.com
mdawson@winthrop.com
dpadmanabhan@winthrop.com
probbennolt@winthrop.com


PATENT OWNER:

Robert J. Gilbertson
Greene Espel, PLLP
222 South Ninth Street, Suite 2200,
Minneapolis, MN 55402
Gilbertson@GreenEspel.com
BGilbertson@greeneespel.com

Daniel A. Tysver
Beck and Tysver, P.L.L.C.
2900 Thomas Ave. South, #100
Minneapolis, MN 55416
dtysver@bitlaw.com


8

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I hereby certify that, on this the 8th day of February, 2016, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will send notice of such filing to all registered users.

I further certify that, upon acceptance and request from the Court, the required paper copies of the foregoing will be deposited with United Parcel Service for delivery to the Clerk, UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT, 717 Madison Place, N.W., Washington, D.C. 20439.

The necessary filing and service were performed in accordance with the instructions given to me by counsel in this case.

/s/ Melissa A. Dockery
Melissa A. Dockery
GIBSON MOORE APPELLATE SERVICES
P.O. Box 1460
Richmond, VA 23218
(804) 249-7770

**<u>CERTIFICATE OF COMPLIANCE</u>**
**With Type-Volume Limitation, Typeface Requirements,**
**and Type Style Requirements**

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

    this brief contains <u>11,411</u> words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    this brief has been prepared in a proportionally spaced typeface using <u>Microsoft Word</u> in <u>14 Times New Roman</u>.

February 8, 2016                                    <u>/s/ Michelle E. Dawson</u>
                                                                    Michelle E. Dawson, #0388610